# MISSOURI PACIFIC RAILWAY COMPANY *v.* UNITED · STATES.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH . CIRCUIT.

No. 108. Argued January 23, 26, 1903.—Decided March 9, 1903.

Prior to the passage of the act of Congress " to further regulate commerce with foreign nations and among the States " approved February 19, 1903, a District Attorney of the United States under the direction of the Attorney General of the United States given in pursuance of a request made by the Interstate Commerce Commission was without power to commence a proceeding in equity against a railroad corporation to restrain it from

discriminating in its rates between different localities. *Held*, therefore, that there was error committed below in refusing to sustain a demurrer of a defendant railroad company to a bill filed by a District Attorney of the United States under the circumstances stated.

As, however, the act of February 19, 1903, expressly conferred the power which did not theretofore exist and as that act specifically provided that the new remedies which it created should be applicable to all causes then pending, *Held*, that although the action of the lower court in refusing to sustain the demurrer would be overruled, the case would not be finally disposed of but would be remanded for further proceedings in consonance with the provisions of the act of February 19, 1903.

THE original bill of complaint in this cause was filed on behalf of the United States against the present appellant in the Circuit Court of the United States for the second division of the District of Kansas on July 26, 1893. To the bill a demurrer was filed and overruled. 65 Fed. Rep. 903. Subsequently exceptions were sustained to an answer, and thereafter an amended answer and a replication were filed. The questions now presented for decision, however, were raised by an amended bill filed on July 19, 1897. In such amended bill it was alleged that the suit was brought on behalf of the United States by the United States attorney for the District of Kansas, by the authority of and under the direction of the Attorney General of the United States, and that such authority and direction had been given in pursuance of a request of the Interstate Commerce Commission of the United States " that the United States attorney for the District of Kansas be authorized and directed to institute and prosecute all necessary proceedings, legal or equitable, for the enforcement of the provisions of the interstate commerce law against the defendant in relation to the matters herein complained of." It was further averred in substance that the respondent was subject to the terms and provisions of the act to regulate commerce, 24 Stat. 379, and operated lines of railway between the city of St. Louis in the State of Missouri, and the city of Omaha, in the State of Nebraska, a distance of 501 miles, and between the city of St. Louis and the city of Wichita, in the State of Kansas, a distance of 458 miles. It was charged that in the transportation of freight between St. Louis and said cities of Omaha and Wichita the service was

·substantially of a like, contemporaneous character, and was made under substantially similar circumstances and conditions but that, notwithstanding such fact, the rates exacted upon shipments of freight between St. Louis and Wichita very much exceeded the rates charged on freight shipped between St. Louis and Omaha. It was averred that the collection of such alleged excessive freight rates or any rate of freight on ship· ments between St. Louis and Wichita in excess of the rate charged for shipments of freight of a similar character and classification between St. Louis and Omaha, operated an unjust and unreasonable prejudice and disadvantage against the city of Wichita and the localities tributary thereto, and against the shippers of freight between St. Louis and the city of Wichita. Averring that the wrongs complained of "are remediless in the premises under the ordinary forms and proceedings at law, and are relievable only in a court of equity and in this form of procedure," the ultimate relief asked was the grant of a perpetual injunction restraining the respondent from continuing to exact a greater rate for transportation of freight of like classification between the city of Wichita and the city of St. Louis than was asked between the city of St. Louis and the city of Omaha. A demurrer was filed to the amended bill upon various grounds, one of which denied the right of the United States to institute the suit.

On hearing, the demurrer was overruled, exception was reserved, and, the defendant electing to stand on its demurrer, a final decree was entered granting a perpetual injunction as prayed, and, on appeal, the Circuit Court of Appeals affirmed the decree, but filed no opinion. An appeal was thereupon allowed.

*Mr. John F. Dillon*, with whom *Mr. J. H. Richards*, *Mr. C. E. Benton*, *Mr. B. P. Waggener* and *Mr. Alexander G. Cochran* were on the brief, for appellant.

I. The Interstate Commerce Act is a complete code of laws and rules of procedure, both civil and criminal, governing interstate commerce and radically revolutionizes all prior procedure. Aside from private actions at law for damages by persons injured (secs. 8, 9), the said act creates new rights and

remedies to which all right of redress is limited, and which the general, or common law, so called, did not give. *I. C. C.* v. *B. & O. R. R. Co.,* 145 U. S. 263, 275; *Express Cases,* 117 U. S. 1; *United States ex rel. Morris* v. *R. R. Co.,* 40 Fed. Rep. 101; *Menacho* v. *Ward,* 27 Fed. Rep. 530; *I. C. C.* v. *C. N. O. & T. P. R. Co.,* 167 U. S. 505.

The Interstate Commerce Act is necessarily exclusive as a rule or system of procedure for primary examination into the facts, and in the language of the act for "the execution and enforcement of its provisions." *Fourth National Bank* v. *Francklyn,* 120 U. S. 747. *United States* v. *Hudson,* 7 Cranch, 32; *West. Un. Tel. Co.* v. *Call Pub. Co.,* 181 U. S. 92, distinguished.

II. The Interstate Commerce Act makes special provisions for the remedy by injunction, and such remedy in cases like the present can only be obtained through a previous investigation by the Interstate Commerce Commission.

Sections 13 to 16, inclusive, provide a complete plan of procedure, in cases like the present, and in terms and purpose are utterly inconsistent with the right of the United States to bring or maintain the present bill.

Before the amendment to § 16 giving the right of recovery at law there existed only the right of equitable relief. *Malcoon* v. *C. & N. W. R. Co.,* 3 I. C. R. 715.

Hitherto uniform course of procedure in cases of this character is against the right to maintain the present suit.

An examination of the whole course of the Interstate Commerce Commission will disclose that they have in every single instance, excepting in the case at bar, pursued the course so clearly defined by the act, and it is manifest that the commission itself recognizes the procedure we insist upon here. *I. C. C.* v. *N. E. R. Co.,* 74 Fed. Rep. 70; 5 I. C. R. 650; *I. C. C.* v. *L. & N. R. Co.,* 73 Fed. Rep. 409; 5 I. C. R. 657. The procedure contended for here is recognized as a condition precedent to equitable relief. *Swift & Co.* v. *P. & R. R. Co.,* 58 Fed. Rep. 858; 4 I. C. R. 633, and *Swift & Co.* v. *P. & R. R. Co.,* 64 Fed. Rep. 59.

These decisions are fatal to the present suit. Also see *State* v. *R. R. Co.,* 17 Neb. 647; *I. C. C.* v. *Ala. M. R. Co.,* 168

U. S. 174; *I. C. C.* v. *C. N. O. & T. P. R. Co.*, 167 U. S. 495–506, and cases cited; *Texas Pacific R. Co.* v. *I. C. C.*, 162 U. S. 204.

By reason of its inequality and injustice, the present procedure, if sustained, would deprive the carrier of the right expressly given to "desist" or make "reparation," etc. See Judge Hook's decision not yet reported in *Vanderslice-Lynde Co.* v. *Mo. P. R. Co.*, January 7, 1902, United States Circuit Court, Kansas.

III. Section 12, upon which the suit here is alleged in the bill to be grounded, does not authorize complainants to bring or the courts to hear the same.

The controversy set forth in the bill—namely, whether the rates complained of are discriminatory, as alleged in the bill—is legal and not equitable in its nature, and entitles the defendant, under the Seventh Amendment to the Constitution, to a trial by jury. Said section 12 does not attempt to change or enlarge the jurisdiction of the Circuit Courts in equity, or to authorize a bill in equity, such as the present bill, to determine the reasonableness of rates or discrimination in rates, either in the name of the United States or in that of the commission, and the Circuit Court in equity has no jurisdiction, either generally or under the Interstate Commerce Act, over the particular controversy presented by the bill. The remedy at law by action or by mandamus is adequate.

IV. There is no remedy in equity for the case stated in the bill: The Interstate Commerce Act confers no general equity jurisdiction; on the contrary a resort to an original bill in equity is excluded by the special provisions of the act as to remedies; the remedy by mandamus is adequate.

It is an indisputable proposition, in the absence of an express statute, that remedy by bill in equity is not the proper remedy to enforce the performance by a corporation of public duties prescribed by law, and especially to enforce by injunction penal statutes. *Attorney General* v. *Utica Insurance Company*, 2 Johnson's Chancery Rep. 371, decided by Chancellor Kent. See, also, case of *People* v. *Same* (*quo warranto*), 15 Johns. 358; *Commonwealth* v. *Bank*, 28 Pennsylvania, 389 (*quo warranto*);

p. 379 (same matter in equity). Citing and distinguishing, *Attorney General* v. *Railroad Companies*, 35 Wisconsin, 425, 1874.

The Supreme Court of the United States has always maintained the distinction between mandamus and relief in equity. Their respective functions are distinct. Thus, mandamus and not a bill in equity lies to compel municipalities to levy taxes according to their contract duty. *Walkley* v. *Muscatine*, 19 Wall. 167; *Heine* v. *Levee Commissioners*, 19 Wall. 655; *Barkley* v. *Levee Commissioners*, 93 U. S, 258; *Thompson* v. *Allen County*, 115 U. S. 550; *Rosenbaum* v. *Bauer*, 120 U. S. 450; *Smith* v. *Bourbon County*, 127 U. S. 105; *Butterworth* v. *United States*, 112 U. S. 50.

The remedy to compel performance of public duty by corporations is by mandamus and not in equity. The principle is elementary. It is indeed fundamental. To those who recall the nature and extent of the superintending jurisdiction of the Queen's Bench over all public bodies and corporations, exercised largely by mandamus, and in connection with this the historical development of equity as a supplement and aid to law where the legal remedies were inadequate, the principle is extremely clear. *Re Sawyer*, 124 U. S. 200, where the general subject is fully considered; *Hannewinkle* v. *Georgetown*, 15 Wall. 475; *Dows* v. *Chicago*, 11 Wall. 108; many cases, Federal and state, are cited in Dillon, Munic. Corp. (4th ed.) secs. 826, 906–908. That the remedy in this case by mandamus is adequate is demonstrable. *In re Debs*, 158 U. S. 564, distinguished.

V. The Interstate Commerce Act as construed by the courts, having conferred upon carriers the sole power of making rates, in the absence of any provisions by Congress fixing interstate rates, and it having made the duty of the carriers in making such rates to take into consideration all of the circumstances and conditions, similar and dissimilar, the schedule or schedules so made are presumptively lawful, and the naked allegation and charge in the bill that such rates are unreasonable and discriminative, or that there is an undue prejudice under similar circumstances and conditions, is not sufficient either to constitute a cause of action or to give the Circuit Court jurisdiction in equity to originally hear and determine the validity

of the rates thus fixed.  *Texas & Pacific Ry. Co.* v. *I. C. C.*, 162 U. S. 197 ; *I. C. C.* v. *Ala. M. R. Co.*, 168 U. S. 144 ; *C. N. O. & T. P. R. Co.* v. *I. C. C.*, 162 U. S. 184–197 ; *T. & P. R.* v. *I. C. C.*, 162 U. S. 197–255 ; *I. C. C.* v. *Ala. C. M. R. Co.*, 74 Fed. Rep. 715 ; *I. C. C.* v. *C. N. O. & C. Co.* 167, U. S. 480 ; *Parsons* v. *C. & N. W. R. Co.*, 167 U. 447 ; High on Injunctions, old ed. § 526.

*Mr. W. C. Perry*, with whom *Mr. Assistant Attorney General Beck* was on the brief, for appellee.

I. The demurrer admits a violation of the law.

II. The purpose of the act was to compel equality of treatment, to provide a new remedy and preserve all existing remedies. *Interstate Commerce Commission* v. *Railway*, 167 U. S. 479.

III. Proceedings before the commission are not exclusive of other remedies.  *State ex rel. Matoon* v. *Railroad*, 17 Nebraska, 648 ; *State ex rel.* v. *Telephone Co.*, 17 Nebraska, 126 ; *Lowry* v. *Railroad*, 46 Fed. Rep. 86 ; *Railroad* v. *Railroad*, 47 Fed. Rep. 771 ; *Vincent* v. *Railroad*, 49 Illinois, 33 ; Sutherland Stat. Const. sec. 202 ; *Smith* v. *Stevens*, 10 Wall. 321 ; *United States* v. *County of Macon*, 99 U. S. 590 ; *Mayor of Nashville* v. *Railway*, 19 Wall. 475 ; *Thomas* v. *West Jersey R. Co.*, 101 U. S. 52 ; *South* v. *Maryland*, 18 Hun, 402 ; *Hearne* v. *Insurance Co.*, 20 Wall. 493 ; *Amy* v. *City of Salina*, 12 Fed. Rep. 414 ; *Oregon Short Line* v. *R. R. Co.*, 51 Fed. Rep. 465 ; *Osborne* v. *Railroad*, 48 Fed. Rep. 49 ; *S. C.*, 52 Fed. Rep. 912 ; *Railway* v. *Goodrich*, 149 U. S. 680 ; *Kentucky Bridge Co.* v. *R. R. Co.*, 37 Fed. Rep. 565 ; *Wright* v. *United States*, 167 U. S. 512 ; *Attorney General* v. *Railroad Companies*, 35 Wisconsin, 425 ; *Coal Company* v. *Coal Company*, 88 Am. Dec. 537 (note) ; 2 Morawetz on Corporations, sec. 1132 ; *Cumberland Valley R. R.'s App.*, 62 Penn. St. 227 ; *Sparhawk* v. *Railroad*, 54 Penn. St. 421 ; *State ex rel.* v. *Saline County Court*, 51 Missouri, 350 ; *State ex rel.* v. *Calloway County*, 51 Missouri, 395 ; High on Injunctions, secs. 1303, 1304, 1554 ; *Interstate Commerce Commission* v. *Railway*, 167 U. S. 479.

IV. Even if the commission has exclusive original jurisdiction of complaints made by individuals, the rule does not ap-

ply to the government. *Savings Bank* v. *United States,* 19 Wall. 239; *Swearingen* v. *United States,* 11 Gill & J. 373; *Commonwealth* v. *Baldwin,* 1 Watts, 54; *United States* v. *Hoar,* 2 Mason, 314; *People* v. *St. Louis,* 5 Gilman, 351; *In re Debs,* 158 U. S. 564.

V. Section 12 specially authorizes this suit.   Sutherland Stat. Const. sec. 240; *Wilkinson* v. *Leland,* 2 Pet. 627, 632.

VI. Remedies summarized.

VII. Cases in which mandatory injunctions have been granted. *Great North. R. R. Co.* v. *R. R. Co.,* 1 Coll. 507; *Earl* v. *G. N. R. R. Co.,* 10 Hare, 664; *Corning* v. *Troy Rail. Co.,* 40 N. Y. 391; *Storer* v. *Great W. R. R. Co.,* 2 Y. & C. 48; *Wilson* v. *Furnace Co.,* L. R. 9 Eq. 28; *Sanderson* v. *Cockermouth Co.,* 11 Beav. 497; *Great Nor. Co.* v. *Manchester Co.,* 5 De G. & S. 138; *Green* v. *West C. Co.,* L. R. 13 Eq. 44; *Hood* v. *N. E. Co.,* L. R. 8 Eq. 666, on appeal; *Commonwealth* v. *Eastern,* 103 Massachusetts, 259; *Harris* v. *Cockermouth Co.,* 3 C. B. N. S. 693; *Mariot* v. *London Co.,* 1 C. B. N. S. 489; *Vincent* v. *C. & A. R. R. Co.,* 49 Illinois, 37; *District Attorney* v. *Ry. Co.,* 16 Gray, 442; *Atty. Gen.* v. *Boston Wharf Co.,* 12 Gray, 553; *Atty. Gen.* v. *Lee Co.,* 104 Massachusetts, 244; *Atty. Gen.* v. *Cohoes Co.,* 6 Paige, 133; *Atty. Gen.* v. *R. R. Co.,* 1 Stock. 526; *Commonwealth* v. *R. R.,* 24 Penn. St. 159; *Georgetown* v. *Canal Co.,* 12 Pet. 98; *Atty. Gen.* v. *Street Ry. Co.,* 14 Grant (V. C.) Ch. 673; *Commonwealth* v. *Ry. Co.,* 24 Penn. St. 159; *Atty. Gen.* v. *Ry. Co.,* 1 D. R. & S. M. 154, 161, 162; *Atty. Gen.* v. *Leicester,* 7 Beav. 176.

VIII. Equity is equal to every emergency.   2 Red. on Rail. sec. 205; *Taylor* v. *Simon,* 4 Myl. & C. 14; *More* v. *Malachy,* 1 Myl. & C. 559; *Wolworth* v. *Holt,* 4 Myl. & C. 619–635; *Munn* v. *Illinois,* 94 U. S. 113; *Chicago &c. Ry. Co.* v. *Ry. Co.,* 47 Fed. Rep. 24; *Gay* v. *United States,* 138 U. S. 1; *Atty. Gen.* v. *R. R. Companies,* 35 Wisconsin, 425.

IX. That there may be a remedy at law to persons for damages is no defence to this suit.   *Atty. Gen.* v. *R. R. Cos., supra; United States* v. *Baker,* 1 Paine, 156; 12 United States Digest (first series), p. 745.

X. The bill does not plead conclusions of law.   The argu-

ment that the traffic between St. Louis and Omaha, and be-
tween St. Louis and Wichita was conducted under similar cir-
cumstances and conditions is one of fact, and not of law.
*Commission* v. *Railway*, 168 U. S. 144; Daniell's Chan. Pl. &
Pr. vol. 1, 6th Am. ed., p. 369; Story Equity Pl. sec. 253;
*Cincinnati, N. O. & T. P. R. Co.* v. *Interstate Commerce Com-
mission*, 162 U. S. 194; *Interstate Commerce Commission* v.
*Alabama Mid. R. Co.*, 168 U. S. 144; *Louisville & N. R. Co.*
v. *Behlmer*, 175 U. S. 648.

XI. Although strictly speaking, there is no national common
law, and even if carriers have the right at their own risk to
make rates which are presumptively lawful, yet these facts do
not affect this case. *Interstate Commerce Commission* v. *Ry.*,
168 U. S. 144.

MR. JUSTICE WHITE, after making the foregoing statement,
delivered the opinion of the court.

The violation of the act to regulate commerce, complained
of in the amended bill, was an asserted discrimination between
localities by a common carrier subject to the act, averred to
operate an unjust preference or advantage to one locality over
another. The right to bring the suit was expressly rested upon
a request made by the Interstate Commerce Commission to do
so, in order to compel compliance with the provisions of the
act to regulate commerce relating to the matters complained
of in the bill.

Bearing in mind that, prior to the request of the commission
upon which the suit was brought, no hearing was had before
the commission concerning the matters of fact complained of,
and therefore no finding of fact whatever was made by the
commission, and it had issued no order to the carrier to desist
from any violation of the law found to exist, after opportunity
afforded to it to defend, the question for decision is whether,
under such circumstances, the law officers of the United States
at the request of the commission were authorized to institute
this suit?

Testing this question by the law which was in force at the
time when the suit was begun and when it was decided below,

we are of the opinion that the authority to bring the suit did not exist.

But this is not the case under the law as it now exists, since power to prosecute a suit like the one now under consideration is expressly conferred by an act of Congress adopted since this cause was argued at bar, that is, the act " To further regulate commerce with foreign nations and among the States," approved February 19, 1903.   By section third of that act it is provided :

" That whenever the Interstate Commerce Commission shall have reasonable ground for belief that any common carrier is engaged in the carriage of passengers or freight traffic between given points at less than the published rates on file, or is committing any discrimination forbidden by law, a petition may be presented alleging such facts to the Circuit Court of the United States sitting in equity having jurisdiction ; and when the act complained of is alleged to have been committed or is being committed in part in more than one judicial district or State, it may be dealt with, inquired of, tried, and determined in either such judicial district or State, whereupon it shall be the duty of the court summarily to inquire into the circumstances, upon such notice and in such manner as the court shall direct and without the formal pleadings and proceedings applicable to ordinary suits in equity.   .   .   ."

And the same section moreover provides as follows :

" It shall be the duty of the several district attorneys of the United States, whenever the Attorney General shall direct, either of his own motion or upon the request of the Interstate Commerce Commission, to institute and prosecute such proceedings, and the proceedings provided for by this act shall not preclude the bringing of suit for the recovery of damages by any party injured, or any other action provided by said act approved February fourth, eighteen hundred and eighty-seven, entitled An act to regulate commerce and the acts amendatory thereof."

Although by the fourth section of the act conflicting laws are repealed, it is provided " but such repeal shall not affect causes now pending nor rights which have already accrued, but

such causes shall be prosecuted to a conclusion and such rights enforced in a manner heretofore provided by law [italics ours] *and as modified by the provisions of this act.*" We think the purpose of the latter provision was to cause the new remedies which the statute created to be applicable as far as possible to pending and undetermined proceedings brought, prior to the passage of the act, to enforce the provisions of the act to regulate commerce. In the nature of things it cannot be ascertained from the record whether the railroad company now exacts the rates complained of as being discriminatory and which it was the purpose of the suit to correct ; but if it does, of course the power to question the legality of such rates by a suit in equity, brought like the one now here, clearly exists. Under these conditions we think the ends of justice will best be served by reversing the decrees below and remanding the cause to the Circuit Court for such further proceedings as may be consistent with the act to regulate commerce as originally enacted and as subsequently amended, especially with reference to the powers conferred and duties imposed by the act of Congress approved February 19, 1903, heretofore referred to.

*The decree of the Circuit Court of Appeals is reversed ; the decree of the Circuit Court is also reversed, and the cause is remanded to the Circuit Court for further proceedings in conformity with this opinion.*

MR. JUSTICE BROWN concurs in the result.

MR. JUSTICE BREWER, with whom concurred MR. JUSTICE HARLAN, dissenting.

I am unable to concur in either the opinion or the judgment in this case.

I think there was no final decree in the Circuit Court, and that, therefore, the Court of Appeals should have dismissed the appeal. After the cause had been once put in issue by bill, answer and replication, a stipulation was filed as follows :

"Whereas, after joining issue upon the pleadings heretofore filed in the above-entitled suit, to wit, the original bill of complaint, the demurrer thereto, the original answer, the amended

answer and the replication thereto, it has been determined by all of the parties to, and all of the parties interested in said suit that it is desirable and best that the questions of law arising upon the bill of complaint as amended and a demurrer thereto be first finally adjudicated and put at rest by the Circuit Court of Appeals of the United States and the Supreme Court of the United States;

"Now, therefore, it is hereby agreed and stipulated by and between the above-named complainants, by their solicitors, W. C. Perry and M. Cliggitt, and the above-named defendant, by its solicitors, J. H. Richards and C. E. Benton, that said complainants shall file an amended bill of complaint in said suit, to which said defendant shall file a demurrer, and that, if the court before which said cause is now pending shall overrule said demurrer and allow the relief prayed for in said amended bill of complaint, then said defendant shall proceed to appeal said cause in due course, and that the party, complainants or defendant, against which said Circuit Court of Appeals shall decide adversely, shall, if said party so desires, in due course appeal said cause for final determination to the Supreme Court of the United States.

"And it is further hereby agreed and stipulated that pending said appeal and all the procedure incident thereto the decree and order of said courts, whether it be said Circuit Court of the United States for the District of Kansas, or said Circuit Court of Appeals, or said Supreme Court of the United States, if adverse to said defendant, allowing and decreeing the reliefs and remedies prayed for in said amended bill of complaint, shall be suspended and not enforced against said defendant The Missouri Pacific Railway Company, and when a decision has been rendered in said suit by said Circuit Court of Appeals, or by the Supreme Court of the United States, if the cause is taken to that court, then it is further hereby agreed and stipulated that the decision and judgment of either or both of said courts, if adverse to said defendant The Missouri Pacific Railway Company, shall be vacated, set aside and annulled and shall not be regarded as of any force or effect against said defendant The Missouri Pacific Railway Company except so far

as holding the amended bill to be sufficient, but that said The Missouri Pacific Railway Company shall have the right and shall be permitted to file an answer in said suit, to which said complainants The United States of America shall in due course file a replication thereto, and the issues shall be duly joined and the cause proceed to hearing and determination upon its merits in due course, the intention of this agreement being that the proceedings had upon the demurrer to said amended bill of complaint and the proposed appeal of said suit to a higher court shall in no manner prejudice the right of said defendant to a trial of said suit upon its merits.

" Dated this 16th day of July, 1897.

　　　　　　　　　　　　" W. C. PERRY,
　　　　　　　　　　　　" MORRIS C. CLIGGITT,
　　　　　　　　　　" *Solicitors for Complainant.*"

On an application made by the complainant, supported by the affidavit of its solicitor, stating that the defendant consented thereto, an order was entered giving the complainant leave to file an amended bill, and also to the defendant, with consent of the complainant, like leave to file a demurrer. An amended bill of complaint and a demurrer thereto were filed, the demurrer was sustained and, the defendant electing to stand on its demurrer, a decree was entered in behalf of the complainant. A transcript before us shows that all this, from the filing of the stipulation to the entering of the decree, took place on the same day, to wit, July 19. Obviously all subsequently thereto was done in pursuance of the stipulation. That the stipulation was not signed by the solicitors for the defendant is immaterial, as it was for its benefit alone. In the brief for the government in this court, after a statement of preliminary proceedings, it is said :

" It being manifest that the great volume of testimony would have to be taken, and as the defendant had raised the serious question whether the United States could maintain the suit, or had the right, in its own name, and without a preliminary hearing before the Interstate Commerce Commission, to enforce, by injunction, the provisions of the Interstate Commerce

Act which forbid discrimination, it was thought best to finally settle that question.    Therefore the stipulation on pages 53–54 was entered into.    That stipulation provides for the filing of an amended bill, the levelling of a demurrer thereat, and an appeal or appeals to the United States Circuit Court of Appeals and to this court.    The amended bill was filed (pp. 55–60); the defendant demurred (p. 61); the court overruled the demurrer, and the defendant, electing to stand on its demurrer, final decree was entered in favor of the complainant.    (pp. 62–73.)"

And in the brief for the defendant and appellant it is in like manner said:

"After all this, the parties made the stipulation found on page 53, to the effect that 'it is desirable and best that the questions of law arising upon the bill of complaint as amended and a demurrer thereto be first finally adjudicated and put at rest by the Circuit Court of Appeals of the United States and the Supreme Court of the United States,' which it was stipulated might be done without prejudice to the right of the defendant if it were held that the bill was maintainable to a trial of the suit upon its merits.

"The amended bill was accordingly filed (Record, pp. 55–60); demurrer thereto was filed (p. 61), and a decree rendered in favor of the complainant."

Now although it may be that the stipulation was not brought into the record by means of a bill of exceptions, and although it does not affirmatively appear that the trial court was made aware of this stipulation, or acted in pursuance thereof, yet as the railway company brings here a record containing the stipulation, and as it is admitted by counsel for both parties that it was entered into, and that subsequent proceedings were had in pursuance of its agreements, I think notice should be taken of it by this court.    Indeed, if nothing appeared of record, and counsel should admit before us that a stipulation had been entered into between the parties in respect to the finality of the decree, ought we not to act on such admission?    Can parties stipulate that questions of law shall alone be presented to this court, and that if our decision be one way the case shall there-

after proceed in the trial court for an inquiry and decree upon the facts? I know that the statutes of some States permit the taking of a case to the appellate court upon a ruling made on a demurrer, but we have always held that the decree or judgment must be final before.we are called upon to review it. When a case has once been decided by this court no further proceedings can be had in the trial court except upon our direction, whereas here the parties have stipulated that without such direction a new trial may be had. In other words, our decision is not to be final although we affirm the decree. It seems to me that the decree of the Court of Appeals should be reversed and the case remanded to that court with directions to dismiss the appeal.

Upon the merits, also, I dissent. The bill is an original bill in behalf of the United States, filed under the direction of the Attorney General, and the fact that the Interstate Commerce Commission requested him to cause this suit to be instituted in no manner adds to or affects the question of the government's right to maintain it. The commission was not asking the Department of Justice to enforce any of its orders, in which case, as we held in *East Tennessee, Virginia & Georgia Railway Company* v. *Interstate Commerce Commission*, 181 U. S. 1, it would become our duty to examine the proceedings had before the commission. This is an independent suit instituted by the government, not to carry into effect any orders of the commission, but to enforce a duty cast upon carriers of interstate commerce, and the right of the government to maintain such a suit does not depend upon the request of any individual or board. The twenty-second section of the act to regulate commerce provides that "nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies." Every remedy, therefore, that the government or any individual had to compel the performance by carriers of interstate commerce of their legal obligations remains unaffected by that act.

We held in *In re Debs*, 158 U. S. 564, that the United States had a right, even in the absence of a statute specially authoriz-

ing such action, to come into the Federal courts by an original bill to restrain parties from obstructing and interfering with interstate commerce. It seems to me singular that the government can maintain a bill to prevent others from obstructing and interfering with interstate commerce and yet cannot maintain a bill to compel carriers to fully discharge their duties in respect to such commerce. Can it be that the government has power to protect the carriers of interstate commerce and not power to compel them to discharge their duties?

It is said that this is a suit to compel the carrier to refrain from discriminating between places; that there was no common law duty to abstain from such discrimination; that it is forbidden only by statute. But confessedly it was a common law duty of a carrier to make no unreasonable charges. It is distinctly averred in the amended bill (Rec. 57, 59) :

" And your orators further aver and show unto your honors that said defendant has established and for a long time has maintained and still maintains in force on the line of its railroad between the city of St. Louis and the city of Wichita rates, rules and regulations governing all freight traffic between said cities over the said railroad which are unjust and unreasonable, in this, that said charges for services rendered by said company in the transportation of property and freight of each and every classification between the said city of St. Louis and the city of Wichita is excessive, exorbitant, unreasonable and unjust to the extent and amount that such rates and charges exceed the rates and charges on the line of said defendant's railroad between the cities of St. Louis and Omaha, all of which is to the great detriment and hindrance of commerce and trade between the said cities of St. Louis and Wichita, and between the localities to which said cities contribute as a supply point, and to the irreparable injury of the public and to the people of the United States.

\*        \*        \*        \*        \*        \*        \*        \*

" And your orators further aver and show unto your honors that any schedule rates and freight charges for the various shipments and classifications hereinbefore set forth between the said cities of St. Louis and Wichita that are in excess of the

tariff schedules and freight charges for shipments of the like kind and class of property between the cities of St. Louis and Omaha are unreasonable, excessive, exorbitant and unjust in and of themselves, and constitute an unreasonable discrimination against Wichita and the localities tributary thereto and the people living therein and against persons shipping freight between the cities of Wichita and St. Louis, and subject such persons and localities to an unjust and unreasonable prejudice and disadvantage."

The truth of these allegations is admitted by the demurrer. The charges for shipments for freight between St. Louis and Wichita are "unreasonable, excessive, exorbitant and unjust in and of themselves." · Surely here is a disregard of what was at common law a plain and recognized duty of the carrier.

Further, while at common law a mere difference in the prices charged by the carrier to two shippers respectively might not have been forbidden, yet it may well be doubted whether, if the difference was so great as to amount to an unreasonable discrimination, the rule would not have been otherwise. In *Interstate Commerce Commission* v. *Baltimore & Ohio R. R.*, 145 U. S. 263, 275, we said:

"Prior to the enactment of the act of February 4, 1887, to regulate commerce, commonly known as the Interstate Commerce Act, 24 Stat. 379, c. 104, railway traffic in this country was regulated by the principles of the common law applicable to common carriers, which demanded little more than that they should carry for all persons who applied, in the order in which the goods were delivered at the particular station, and that their charges for transportation should be reasonable. It was even doubted whether they were bound to make the same charge to all persons for the same service, *Fitchburg R. R. Co.* v. *Gage*, 12 Gray, 393; *Baxendale* v. *Eastern Counties Railway Co.*, 4 C. B. (N. S.) 63; *Great Western Ry. Co.* v. *Sutton*, L .R. 4 H. L. 226, 237; *Ex parte Benson*, 18 S. C. 38; *Johnson* v. *Pensacola Ry. Co.*, 16 Florida, 623, though the weight of authority in this country was in favor of an equality of charge to all persons for similar services."

But beyond this the interstate commerce act itself forbids

unjust discrimination, and such discrimination is also clearly and fully set forth in the bill.   Can it be that the government is powerless to compel the carriers to discharge their statutory duties?   It is nowhere said in the interstate commerce act that this duty or any other duty prescribed by statute is to be enforced only through the action of the commission.   On the contrary, as we have seen, it expressly provides that all other remedies are left unaffected by the act, and a duty cast by statute equally with a common law duty may by the very language of the act be enforced in any manner known to the law.

. Further, the act to regulate commerce, as originally passed, in section 16, required the district attorneys of the United States, under the direction of the Attorney General, to prosecute suits to compel carriers to obey the orders of the commission.   If all remedies were to be secured only through action in the first instance by the commission that provision was all that was necessary, but in the amendatory act of 1889, 25 Stat. 855, there was added in section 12 this clause: "The commission is hereby authorized and required to execute and enforce the provisions of this act; and, upon the request of the commission, it shall be the duty of any district attorney of the United States to whom the commission may apply to institute in the proper court and to prosecute, under the direction of the Attorney General of the United States, all necessary proceedings for the enforcement of the provisions of this act, and for the punishment of all violations thereof."   Clearly that contemplates just such a case as the present, and when, in the judgment of the commission, it is better that the proceedings should be had primarily in the courts, it may call upon the legal officers of the United States to bring the proper actions.

For these reasons I am compelled to dissent, and I am authorized to say that MR. JUSTICE HARLAN concurs in this opinion.