262 F.2d 852
 Francis M. GIBBONS, Trustee, and Francis M. Gibbons,
Individually, Appellant,
v.
PAN AMERICAN PETROLEUM CORPORATION, a corporation (formerly
Stanolind Oil and Gas Company), Appellee.
 No. 5945.
 United States Court of Appeals Tenth Circuit.
 Dec. 17, 1958.
 
 Clair M. Senior, Salt Lake City, Utah, for appellant.
 Clinton D. Vernon, Salt Lake City, Utah (Wayne C. Durham and Grant A. Brown, Salt Lake City, Utah, with him), for appellee.
 Before PHILLIPS, MURRAH and LEWIS, Circuit Judges.
 MURRAH, Circuit Judge.
 
 
 1
 Defendant Gibbons appeals from a judgment reimbursing Pan-American Petroleum Corporation for rentals on five federal oil and gas leases paid by Pan-American to the Bureau of Land Management after the leases had been assigned to the defendant.
 
 
 2
 The underlying facts are undisputed. Before February, 1956, Pan-American held these five federal oil and gas leases, and appellant Gibbons held as trustee for various beneficial owners an overriding royalty interest therein. The leases were a part of the Hill Creek Unit Agreement[1] to which both Pan-American and Gibbons were parties, the former as a working interest owner and the latter as an overriding royalty owner.
 
 
 3
 When a nearby dry hole caused Pan-American to lose interest in these leases, it gratuitously assigned them to Gibbons in his capacity as trustee pursuant to company policy to assign such leases to any overriding royalty owner desiring them. By law and regulation (30 U.S.C.A. 187; 43 C.F.R. 192.140), assignments of federal leases are subject to approval by the Department of Interior, and Pan-American requested Gibbons to seek approval of these assignments as soon as possible. However, Gibbons never did file the assignments for approval, leaving Pan-American as the record owner so far as the Bureau of Land Management was concerned.
 
 
 4
 A few days before Pan-American assigned these leases to Gibbons, dissolution of the Hill Creek Unit Agreement was sought by various working interest owners, including Pan-American, in a request to the Director of the United States Geological Survey. A few days after the assignment of these leases, termination of the unit agreement was approved, and the unit operator (Carter Oil Company) was charged with the duty of giving notice of dissolution to all parties to the agreement, including both the appellee and the appellant. The trial court found that Carter mailed the requisite notice to Gibbons, but that he did not receive it. The effect of the unit termination on the five leases here in question was to automatically extend their primary terms for two years by operation of law, rather than permitting them to expire at the end of their original primary terms on their next anniversary dates, varying from June 1, 1956, to October 1, 1956, unless to course oil or gas had been discovered. 60 Stat. 952, 953, 30 U.S.C.A. 226e; 43 C.F.R. 192.123.
 
 
 5
 Because of the automatic extension, however, the Bureau of Land Management, after the various anniversary dates of the leases had passed, demanded payment of rentals from Pan-American as the record owner of the leases. Pan-American transmitted this demand to Gibbons, who immediately returned it. Pan-American then paid the rentals under protest, reserving all rights against the Bureau. It then brought this suit against Gibbons for reimbursement, contending that the rentals were his obligation as the assignee of the leases.
 
 
 6
 Gibbons, on the other hand, contended at the trial, and contends here, that he was under no obligation to pay the rentals since the assignments were not approved by the Department of Interior; that despite the Bureau's demand for payment, the rentals were not due under a proper interpretation of the law, and their payment by Pan-American was therefore voluntary; and that Pan-American permitted avoidable damages to occur by failing to alert Gibbons of the automatic lease extensions through unit termination, of which Pan-American had knowledge and Gibbons did not.
 
 
 7
 In its exhaustive and convincing opinion, the trial court took the view that Gibbons' liability for the rentals 'resulted from the acceptance of the assignment and did not depend upon the additional duty * * * of filing the assignments for approval.' Pan-American Petroleum Corp. v. Gibbons, D.C., 168 F.Supp. 875. Pan-American could 'reasonably assume' that Gibbons intended to pay the rentals under the leases or to see that the leases were terminated so as to avoid the necessity of their payment.
 
 
 8
 It is sufficient to say that we agree with the conclusions of the trial court and with its cogent reasoning. Fundamentally, an assignee of a lease takes the interest of the assignor and incurs the same obligations, including the payment of accruing rentals in the absence of agreement otherwise. See Thornton on Oil & Gas, Vol. 2, 349.
 
 
 9
 The fact that the lease assignments were unapproved by the Bureau of Land Management is of no moment, since the assignee could not avoid their obligations by simply not offering them for approval. Rue v. Merrill, 42 Wyo. 511, 297 P. 379. See also Recovery Oil Co. v. Van Acker, 79 Cal.App.2d 639, 180 P.2d 436; Isaacs v. De Hon, 9 Cir., 11 F.2d 943; Blackner v. McDermott, 10 Cir., 176 F.2d 498; Oldland v. Gray, 10 Cir., 179 F.2d 408. We need not consider whether the result would have been different had the assignments been offered for approval and approval denied as in Oasis Oil Co. v. Bell Oil & Gas Co., D.C., 106 F.Supp. 954.
 
 
 10
 After the issuance of these leases to Pan-American, but before their assignment to Gibbons, Congress enacted Public Law 555, 83rd Congress, (30 U.S.C.A. 188) providing in material part '* * * upon failure of a lessee to pay rental on or before the anniversary date of the lease, for any lease on which there is no well capable of producing oil or gas in paying quantities, the lease shall automatically terminate by operation of law * * *.' The undisputed purpose of this provision was to effect automatic termination of federal leases for non-payment of such rentals, thus obviating the accrual of the rentals as a debt against lessees.
 
 
 11
 The trial court accepted the administrative interpretation of the law to apply only to leases issued after July 29, 1954, the effective date of the Act, or extended after that date by application of the lessee and his qualification under proper regulation. 43 C.F.R. 192.161. Gibbons contends, however, that the statutory language of 'any lease' indicates an intention not to limit applicability to leases executed after passage of the law, that is to say, an intention that the Act was to have retroactive application. Thus, Gibbons argues that by force of the Act, the leases terminated, the rentals did not accrue and Pan-American paid them as a mere volunteer.
 
 
 12
 Of course, acts of Congress in many instances may constitutionally have retroactive effect, but a substantive statute will not be construed to operate retroactively unless that intention has been manifested by clear and unequivocal expression. Shwab v. Doyle, 258 U.S. 529, 42 S.Ct. 391, 66 L.Ed. 747; Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858. We do not find any clear expression of such an intent in the language of the Act particularly in the face of the persuasive administrative interpretation that it was intended to act prospectively.
 
 
 13
 And, Gibbons' further contention that Public Law 555 is applicable to these leases in any event because their automatic extension through termination of the unit agreement came after passage of the Act must also fail. In line with the interpretation of the Act as prospective in effect, the Bureau and the trial court wre justified in drawing a distinction between the automatic extension of leases by operation of law and their extension upon application, which is surely more akin to the issuance of new leases.
 
 
 14
 But assuming the applicability of the Act relieving the necessity of the delay rental payments, it was not incumbent upon Pan-American to construe the law at its peril. Pan-American transmitted the Bureau's demand for payment to Gibbons, and then reserved his rights as well as its own in making payment. The burden of litigating with the Bureau the proper interpretation of Public Law 555 lies with Gibbons, as the primary obligor, instead of Pan-American. Pan-American surely made payment in the justifiable belief that the duty existed, as in Restatement of Restitution, 78, and is entitled to indemnification by Gibbons no matter what interpretation is placed on the Act.
 
 
 15
 Nor do we think meritorious Gibbons' contention that Pan-American failed to avoid damage by not apprising Gibbons of the unit termination extending the eases, and thus not alerting him to take steps to surreder the leases before accrual of the rentals, if he wished. Upon the dissolution of the unit agreement, the unit operator, not Pan-American, was charged with the duty of giving notice of the termination to the parties, including Gibbons. The trial court specifically found that 'the plaintiff (Pan-American) had no reason to suppose that the defendant (Gibbons) did not know of the termination of the unit agreement.' Pan-American Petroleum Corp. v. Gibbons, supra, 168 F.Supp. 876. Pan-American clearly cannot be precluded from recovery for failure to inform Gibbons of a fact when it had no initial duty to do so, and no knowledge that Gibbons was ignorant of the fact.
 
 
 16
 At the time he took the lease assignments, Gibbons knew that dissolution of the unit was under consideration, and it goes without saying that at any time he could have discovered the status of the unit agreement by the simplest inquiry.
 
 
 17
 The only question remaining on this appeal is whether the court erred in awarding judgment against Gibbons individually, in view of the fact that the lease assignments were made to him as trustee. But a trustee does not enjoy liability limited to his capacity as trustee in his contractual relationships with third persons. Scott on Trusts, 262; Bogert on Trusts, 712; Restatement of Trusts, 261, 262.
 
 
 18
 The judgment is affirmed.
 
 
 
 [1]
 Unitization of these leases with certain others in the hope of discovering oil or gas in paying quantities was approved by the Acting Director of the United States Geological Survey and by the Assistant Commissioner of Indian Affairs on June 30, 1955