UNITED STATES v. MILWAUKEE REFRIGERATOR TRANSIT CO. et al.

(Circuit Court, E. D. Wisconsin. May 31, 1906.)

1. CARRIERS—INTERSTATE COMMERCE—REBATES—CORPORATIONS—ELKINS ACT — VIOLATION.

A refrigerator company was incorporated to own and operate a private car line, and to have charge of all the interstate transportation of the product of a brewing company. A majority of the brewing company's stock, however, was owned by persons who had no interest in the refrigerator company, and the stock of the latter was bought and paid for by the holders with their own money and in their own interest; none of it being held in trust for the brewing company, though the majority of it

was owned by persons who also owned brewing company stock. The brewing company paid its freights in full and received no rebates, nor was it a party to contracts between the refrigerator company and the railroad companies by which the refrigerator company received a rebate of from one-eighth to one-tenth of all freight moneys on all interstate traffic it controlled. *Held*, that such facts were insufficient to establish that the brewing company had received rebates in violation of Elkins Act, Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599.]

2. INJUNCTION—CARRIERS—REBATING—RESTRAINING CRIME.

Equity has jurisdiction to grant an injunction at the instance of the United States against carriers and other corporations, restraining them from giving and receiving rebates in violation of Elkins Act, Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599], though such acts may also constitute a crime.

3. CARRIERS—REGULATION—REBATES—INJUNCTION—RIGHT TO SUE.

Elkins Act, Feb. 19, 1903, c. 708, § 3, 32 Stat. 848 [U. S. Comp. St. Supp. 1905, p. 600], prohibiting rebates by carriers, provides for actions by the Interstate Commerce Commission after investigation, and declares that it shall be the duty of the several District Attorneys of the United States, whenever the Attorney General shall direct, either of his own motion or upon the request of the Interstate Commerce Commission, to institute and prosecute such proceedings. *Held*, that the Attorney General had authority to institute a proceeding to restrain rebating by interstate carriers of his own motion, without direction or investigation on the part of the Interstate Commerce Commission.

4. SAME—COUNSEL FOR UNITED STATES—APPOINTMENT.

Where a proceeding to restrain certain carriers and shippers from giving and receiving rebates on interstate shipments was instituted at the direction of the Attorney General, who retained special counsel nominated by the informing witness, and defendants made no application for a stay of proceedings in order to object to the appearance of such special counsel, they were not entitled to a dismissal on the ground that prosecutor had agreed with the Attorney General to bear a deficiency in the expense of the prosecution after applying the balance of the Attorney General's appropriation applicable to that purpose.

5. SAME—STATUTES—CONSTRUCTION—SHIPPERS.

Elkins Act, Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599], provides that it shall be unlawful for any person, persons, or corporations to solicit, accept, or receive any rebate, concession or discrimination in respect of the transportation of any property in interstate or foreign commerce, whereby such property shall by any device whatever be transported at a less rate than that named in the tariffs published and filed by the carrier, and section 2 declares that it shall be lawful to include as parties, in addition to the carrier, all persons interested in or affected by the rate, regulation, or practice under consideration. *Held*, that a refrigerator company organized for the purpose of controlling the interstate transportation of a brewing company, having entered into a contract for rebates with certain railroads, was a "party interested in the traffic," and was therefore subject to the provisions of such act.

6. SAME.

Under Elkins Act, Feb. 19, 1903, c. 708, § 1, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599], prohibiting the giving or receiving of rebates in respect to the transportation of any property in interstate or foreign commerce "by any device whatever" it was unlawful for a corporation organized to control the interstate transportation of a brewing company to demand and receive as a consideration for the routing of the brewing company's products over certain lines of railroad a concession equal to one-eighth or one-tenth of the published freight rates.

In Equity.

See 142 Fed. 247.

James G. Handen, for Pabst Brewing Co.

Geo. D. Van Dyke, for Milwaukee Refrigerator Co.

W. O. Johnson, for Erie R. Co.

H. K. Butterfield and Charles Quarles, Special Counsel, for the United States.

Before GROSSCUP, BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

BAKER, Circuit Judge.   This is a proceeding to enjoin the defendants from continuing practices which are claimed to be in violation of Elkins Act, Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599].

The charges in the petition are substantially these:

That the brewing company organized the refrigerator company, is the beneficial owner of the refrigerator company stock, and thereby indirectly receives the moneys paid by the railroad companies to the refrigerator company on account of beer shipments, as hereinafter stated.

That the refrigerator company, apart from the charge that it is a dummy of the brewing company, was organized and is being carried on as a device for the purpose and with the intent of exacting from the railroad companies a large proportion of the freight moneys for interstate and foreign shipments controlled by it; that it has obtained and holds contracts from the brewery company and other owners of goods, whereby it is given the exclusive control of shipments to competitive points; that it withholds such traffic from railroad companies which refuse to return to it from one-tenth to one-eighth of the freight moneys, and gives the business only to the railroad companies which contract to make such returns.

That the defendant railroad companies, with the intent of evading the law, have entered into such contracts with the refrigerator company, and thereunder have paid to the refrigerator company from one-tenth to one-eighth of the freight moneys on all traffic controlled by the refrigerator company.

That, unless restrained, the parties will continue these practices.

1. As to the brewing company.

The majority of the brewing company stock is owned by persons who have no interest in the refrigerator company. The stock of the refrigerator company was bought and paid for by the holders thereof with their own money and in their own interest. None of it is held in trust for the brewing company. The majority of it is owned by persons who also own brewing company stock. But the brewing company pays its freight in full, receives no rebates, and is not a party to the contracts between the refrigerator and the railroad companies. Under the evidence, the most that can fairly be said of the relations between the brewing and the refrigerator companies is that the former gave the control of shipments to the latter as a favor, and to enable it to profit thereby if it could. For failure of proof, the charges against the brewing company are dismissed.

145 F.—64

2. Objections to the maintenance of this proceeding against the remaining defendants.

(1) Contention is made that equity jurisdiction does not inherently extend, and cannot by Congress be extended, to restraining the commission of crimes and misdemeanors.

To afford protection where other means are inadequate has been accounted the chief merit of equity. That the infraction of a complainant's rights may also constitute a crime is no reason for denying relief. Cases of refusal where no property was involved came largely, we believe, from the consideration that equity will not enter unenforceable decrees, and not from regard for the intending doer of the criminal act. If a complainant's rights, whether the higher and more sacred rights of person (Warfield's Case [Tex. Cr. Rep.] 50 S. W. 933, 76 Am. St. Rep. 727; Itzkovitch v. Whitaker [La.] 39 South. 499), or the lower and more sordid rights of property, cannot be adequately protected elsewhere; and if a decree and writ that will be enforceable can be framed, no court of equity should acknowledge itself wanting in the primary power of devising decrees and writs to meet the needs of the situation.

The evils that have resulted from railroad companies' secret abatement of published rates in favor of particular persons have long been matters of common report and discussion. If a person whose business was being undermined and ruined through advantages unlawfully given to a competitor should seek relief in equity, the objection that a property right was not involved would be wanting. Because the persons affected are so numerous and widely separated, because their injuries severally may be small, and because the United States has the regulation of interstate and foreign commerce, in our opinion Congress very clearly had the power to authorize equity proceedings by the United States as complainant (parens patriæ in that respect), for the protection of all persons who would be injured by the unlawful practices. This conclusion necessarily was upheld in Swift v. U. S., 196 U. S. 375, 25 Sup. Ct. 276, 49 L. Ed. 518, though the contrary contention seems not to have been presented, and in Mo. Pac. Ry. v. U. S., 189 U. S. 274, 23 Sup. Ct. 507, 47 L. Ed. 811, wherein the question was argued by counsel.

(2) The Attorney General, of his own motion, directed the institution of this proceeding. Defendants claim that a suit of this kind will not lie except upon the initiative of the Interstate Commerce Commission. Section 3 of the Elkins Act (32 Stat. 848 [U. S. Comp. St. Supp. 1905, p. 600]) opens by providing for action by the Commission after investigation. The bill, as it passed the Senate and went to the House, evidently contemplated no other mode. In the House, the mandate that "it shall be the duty of the several district attorneys of the United States to institute and prosecute such proceedings" was amended by inserting after "United States" the clause, "whenever the Attorney General shall direct, either of his own motion, or upon the request of the Interstate Commerce Commission." Whatever doubt concerning the authority of the Attorney General to direct the bringing of this suit might arise from a mere reading of section 3 is removed, we think, by noting the history of the bill.

(3) A witness for complainant testified on cross-examination, in substance, that he was president of a rival refrigerator company; that he brought the alleged unlawful acts of defendants to the notice of the Interstate Commerce Commission; that the Commission took no action; that subsequently he called the Attorney General's attention to these matters; that the Attorney General stated to the witness that he would direct the District Attorney to begin proceedings, that he believed the District Attorney should have assistance, but doubted whether the appropriation at his command for that purpose would suffice to bear all of the expense, and asked the witness if his company would make up any deficiency; that the witness assented; that on the Attorney General's inquiry concerning desirable special counsel the witness named Mr. Charles Quarles, who subsequently was retained by the Attorney General; that the witness, by reason of his arrangement with the Attorney General, has made payments to Mr. Quarles; and that Mr. Quarles represents the witness in certain lawsuits.

On this the defendants have based a motion to dismiss the proceeding.

That the Attorney General exercised his own judgment in determining to direct the bringing of this suit is quite apparent. No witness, though hostile, can properly be criticised for calling the attention of the authorities to alleged violations of law. The facts on which the questions of legality depend are admitted by the defendants. No improper conduct by Mr. Quarles in eliciting the facts is shown or claimed. In open court defendants expressly waived any objection to the presentation and argument of the questions of law by Mr. Quarles on behalf of the United States.

If it be conceded that the law requires the United States to be represented by counsel who are as interested to see the innocent discharged as the guilty held, and that the Attorney General is not authorized to retain special counsel except on the basis that compensation shall come from the United States and nowhere else, it might be that the defendants would be entitled to a stay of proceedings until the United States should be represented by counsel concerning whose relations no objection could be urged. But this was not asked. And since the Attorney General properly directed the District Attorney to begin and prosecute this proceeding, and the defendants concede the facts on which liability must be predicated, if at all, they certainly are not entitled to a dismissal.

3. The character of the refrigerator company's practices.

The company owns refrigerator cars which it places at the disposal of railroad companies for use by them in handling certain kinds of traffic, and they pay it rent for the cars in the form of mileage. There is neither averment nor proof which attacks the company in its character of lessor of cars to the railroads.

But, under the conceded facts, as we view them, the refrigerator company in its relations with the railroads appears in another role—that of shipper. From the brewing company and other owners of goods intended for interstate and foreign transportation the refriger-

ator company obtains the exclusive right to route the shipments to all competitive points, and then withholds or gives the business according to the railroad companies' resistance or submission to the threat of diverting the traffic unless a tenth or an eighth of the freight moneys be paid to it. Control of the traffic is as absolute in the refrigerator company as if it were owner, and in numerous transactions the owner is not the shipper. And if an owner, having full dominion in all respects, conveys to another the dominion for transportation purposes, that other in all dealings respecting transportation should be deemed the owner and shipper. In this case, if the refrigerator company bought the beer, and paid the brewing company's bill less freight, and then collected the beer accounts, and paid the railroads seven-eighths or nine-tenths of the published rates, the granting of a rebate or concession by a carrier to a shipper would not be denied, we take it; and yet, so far as ledger balances and profits of the brewing company, the refrigerator company, and the railroads are concerned, the present method in its results is precisely that.

The foregoing consideration is in answer to defendants' insistence that the Elkins act touches only the carrier and the shipper. But under the strictest construction (and that the act should be fairly interpreted to effectuate its remedial purposes, see New York, etc., R. M. Co. v. Interstate Commerce Commission [U. S. Sup. Feb. 19, 1906]), 26 Sup. Ct. 272, 50 L. Ed. ——, we think it was designed to restrain all "parties interested in the traffic."

In section 1:

"It shall be unlawful for any person, persons or corporation * * * to solicit, accept, or receive any rebate, concession or discrimination in respect of the transporation of any property in interstate or foreign commerce * * * whereby any such property shall by any device whatever be transported at a less rate than that named in the tariffs published and filed by such carrier."

In section 2:

"It shall be lawful to include as parties, in addition to the carrier, all persons interested in or affected by the rate, regulation, or practice under consideration."

And in section 3:

"Upon being satisfied of the truth of the allegations of said petition said court shall enforce an observance of the published tariffs * * * by proper orders, writs and process * * * as well against the parties interested in the traffic as against the carrier."

So, if the refrigerator company be not considered as the shipper, it is, at least, a "party interested in the traffic."

4. In the practice stated it is evident that the railroad companies, in acceding to the demands of the refrigerator company, have (1) failed strictly to observe the published tariffs, and (2) granted concessions whereby they received a less rate than that named in the published tariffs for the transportation of property in interstate and foreign commerce, both in disregard of the provisions of section 1.

It matters not that the particular practice herein disclosed is not

described in the act. The inhibition of "any device whatever" that accomplishes the condemned results is a ban upon invention in this field.

So far as the fact of intent is material, it follows from the consideration that the parties knowingly and deliberately did what they did.

Let a decree be entered against the refrigerator and railroad companies defendant, in accordance with the prayer of the petition.