## BENJAMIN v. HUNTER.

No. 3858.

United States Court of Appeals Tenth Circuit.

June 29, 1949.

See also 10 Cir., 169 F.2d 512.

Arthur Benjamin, pro se, and Robert D. Looney, Oklahoma City, Okl., for appellant.

Thomas J. Brown, Jr., Asst. U. S. Atty., Leavenworth, Kan. (Lester Luther, U. S. Atty., and Malcolm Miller, Asst. U. S. Atty., Topeka, Kan., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and MURRAH, Circuit Judges.

PHILLIPS, Chief Judge.

This is an appeal from an order dismissing an application for a writ of habeas corpus.

On June 27, 1943, Arthur Benjamin[1] was sentenced by an Army General Court Martial to 15 years' imprisonment upon conviction of violations of the Articles of War. He commenced service of the sentence on August 26, 1943, at the United States Penitentiary at McNeil Island, Washington. On August 8, 1944, all of the good time which he had earned and might earn in the future under 18 U.S.C.A. § 710 [now § 4161] was forfeited for the reason that he attempted to smuggle a contraband letter out of the institution.

On June 24, 1945, petitioner was transferred to the United States Penitentiary at Alcatraz, California, and on September 11, 1946, he was transferred to the United States Penitentiary at Leavenworth, Kansas.

On November 12, 1945, his sentence was reduced to eight years and on October 6, 1948, it was reduced to seven years.

On September 22, 1947, 450 days of the statutory good time which had been forfeited were restored by the Attorney General under 18 U.S.C.A. § 711 [now § 4166].

Prior to September 1, 1948, the effective date of 18 U.S.C.A. § 4161, good time earned and good time which might be earned in the future could be forfeited for violation of the rules of the penal institution.[2]

Section 4161, supra, in part reads:

"Each prisoner convicted of an offense against the United States and confined in a penal or correctional institution for a definite term other than for life, whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment, shall be entitled to a deduction from the term of his sentence beginning with the day on which the sentence commences to run, *to be credited as earned and computed monthly as follows:* * * *

"Eight days for each month, if the sentence is not less than five years and less than ten years. * * *"[3] (Italics ours.)

18 U.S.C.A. § 4165 reads:

"If during the term of imprisonment a prisoner commits any offense or violates the rules of the institution, all or any part of *his earned good time* may be forfeited." (Italics ours.)

The application for the writ was filed September 1, 1948. It was dismissed December 9, 1948. A motion for a rehearing was denied December 29, 1948. The prison officials at Leavenworth, in determining

---

[1] Hereinafter called petitioner.

[2] Carroll v. Zerbst, 10 Cir., 76 F.2d 961, 962.

[3] "Words 'to be credited as earned, and computed monthly as follows' were inserted in the first paragraph to clarify the language and permit the Bureau of Prisons to credit good time only as it is earned, and to reverse an administrative practice which heretofore has credited to the inmate upon his entry into the institution all the good time which would be earned throughout his entire sentence. Upon misconduct requiring forfeiture of good time allowance the prisoner suffered the loss of both earned and unearned good time. Consequently he had no incentive to good behavior. The Bureau of Prisons strongly recommended the change made in this revised section." Reviser's Note, 18 U.S.C., Congressional Service, p. 2653.

the release date for petitioner, in substance made the following computation:

Total good time 8 days per month for 7 years, or 84 months..... 672 days
Good time forfeited............ 672 days
Good time restored............ 450 days
Release date .............. June 1, 1949

That is to say, they deducted from August 25, 1950, the end of the 7-year term, 450 days.

Petitioner submits two alternative methods of computation of his 7-year sentence from its commencement date August 26, 1943, which are set out in the margin.[4]

---

4 (1) 1. Total days to serve on a 7 years sentence 7 x 365 ................................. 2,555
2. Total days allowable on statutory good time— 8 days x 12 mos. x 7 years .............. 672

3. Total days to serve with good time allowlowance ............................... 1,883
4. Maximum amount of time earned to September 1, 1948 and therefore maximum that can be forfeited to September 1, 1948, figured on 8 days per month

| Month | Day | Year |
|---|---|---|
| 9 | 1 | 48 |
| 8 | 26 | 43 |
| 6 | 5 | |

5 years 6 days—60.2 months, 60.2x8 ...... 482
5. New total of days of sentence with forfeiture ................................... 2,365
6. Subtract 450 days restored to prisoner .... 450

7. New total of days to serve ............... 1,915
8. 1915 days divided by 365 ............... 3 mos. 0 days 5 years
9. Term started Aug. 26, 1943 ............. 8 mos. 26 days 43 years

10. Add 8 and 9 ........................11 mos. 26 days 48 years
11. Release day—November 26, 1948 ..........................

(2) 1. Total days to serve on a 7 year sentence— 7 x 365 ................................. 2,555
2. Total days allowable on statutory good time— 8 x 12 x 7 ............................ 672

3. Total days to serve with good time deductions ................................... 1,883
4. Forfeiture of all good time for infraction of rules .................................. 672
5. New total with forfeiture ............... 2,555
6. Good time forfeiture restored ............. 450
7. Manual Bulletin No. 259, Department of Justice, says all prisoners are eligible to earn good time from Sept. 1, 1948. From Sept. 1, 1948, to end of 7 year term, i.e., Aug. 25, 1950 is 23 4/5 months—23.8 mos. x 8 days ... 190
8. Total days restored and good time earnable from Sept. 1, 1948 ..................... 640

9. New total days to serve ................. 1,915
10. 1915 divided by 365 .................... 3 mos. 5 years
11. Date sentence began .................... 8     26     43

12. New release day .......................
     or                               11     26     48
     November 26, 1948.

A statute, in the absence of clear expression to the contrary, is presumed to operate prospectively,[5] and we are of the opinion that § 4161, supra, should not be applied retroactively. But a statute is not rendered retroactive merely because the facts or requisites upon which its subsequent action depends are drawn from a time antecedent to its enactment.[6]

We are of the opinion that there is much force to the argument that the provisions of § 4161, supra, should apply in the computation of petitioner's sentence from and after September 1, 1948, and that the amount of the forfeiture should be limited to the good time earned under the former statute up to September 1, 1948, which is 481 days.[7] Of that good time forfeited, 450 days were restored. Giving petitioner credit for 450 days, his release date would be June 1, 1949, less the good time he could earn after September 1, 1948. But, under § 4161, supra, good time is to be credited as earned and computed monthly on the basis of eight days per month on a 7-year sentence. The fallacy in petitioner's computations is that he takes credit for good time after September 1, 1948, not as earned but for the entire period between September 1, 1948, and August 25, 1950. When the petition was filed on September 1, 1948, petitioner had not earned any good time after September 1, 1948. When the order denying the rehearing was filed on December 29, 1948, petitioner had earned approximately 32 days good time. If he is credited with 450 days up to September 1, 1948, his sentence would expire June 1, 1949. If he is given credit, in addition to the 450 days, for good time from and after September 1, 1948, his release date would not eventuate until approximately April 8, 1949.

It follows that whether the release date is computed under the prior law or under § 4161, supra, petitioner was not entitled to discharge.

Our opinion should not be construed as holding that the release date should be determined by the application of § 4161, supra, in the manner we have indicated, because a writ of habeas corpus may not be used to invoke judicial determination of questions which, even if determined in petitioner's favor, could not affect the lawfulness of his custody and detention or result in his immediate release.[8]

The trial court released petitioner on bond until the disposition of this appeal. The judgment is affirmed and petitioner is ordered to surrender himself to the custody of the Warden. In the event petitioner does not surrender himself, proper process may be issued for his arrest and return to the Leavenworth Penitentiary.

BRATTON, Circuit Judge, concurs in the result.

---

[5] Hassett v. Welch, 303 U.S. 303, 314, 58 S.Ct. 559, 82 L.Ed. 858; Brewster v. Gage, 280 U.S. 327, 337, 50 S.Ct. 115, 74 L.Ed. 457; Claridge Apartments Co. v. Commissioner, 323 U.S. 141, 164, 65 S.Ct. 172, 89 L.Ed. 139.

[6] Reynolds v. United States, 292 U.S. 443, 449, 54 S.Ct. 805, 78 L.Ed. 1353; Cox v. Hart, 260 U.S. 427, 435, 43 S.Ct. 154, 67 L.Ed. 332.

[7] In Manual Bulletin No. 259, issued by the Director of Prisons, with the approval of the Attorney General, the following appears:

"All prisoners are eligible to earn good time deductions beginning September 1, 1948. Sentences of inmates who have forfeited all good time prior to September 1, or an amount greater than that earnable up to September 1 under the new regulations, should be recomputed accordingly."

[8] McNally v. Hill, Warden, 293 U.S. 131, 135-139, 55 S.Ct. 24, 79 L.Ed. 238.