AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA, a Florida corporation, Plaintiff,

v.

UNITED STATES of America, Defendant.

AMERICAN BANKERS LIFE ASSURANCE COMPANY OF FLORIDA, a Florida corporation, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 65-920.

United States District Court
S. D. Florida,
Miami Division.

Feb. 17, 1967.

Curtis L. Bader, of Helliwell, Melrose & DeWolf, Miami, Fla., for plaintiffs.

William A. Meadows, Jr., U. S. Atty., and Alfred E. Sapp, Asst. U. S. Atty., Miami, Fla., for the Government.

## OPINION AND ORDER

ATKINS, District Judge.

This cause came on for hearing on cross motions for summary judgment filed by the respective parties in this matter. The above motions were filed in each of two consolidated lawsuits in which plaintiffs, domestic insurance companies, are alternatively suing for the redemption or refund of monies paid for certain documentary excise tax stamps purchased from August, 1961 to December, 1963.

There are two questions presented for decision:

1. Whether plaintiffs' actions in handling the stamps purchased for use on contracts of reinsurance constituted "affixing" within the meaning of the Internal Revenue Code of 1954, Section 4374.

2. Whether plaintiffs are liable for documentary excise stamp taxes on contracts of reinsurance issued by foreign insurers to reinsure policies of insurance (contracts) issued by plaintiffs, domestic insurers, under Section 4371(3) of the Internal Revenue Code of 1954.

The following facts have been stipulated by the parties.

Plaintiffs are corporations duly organized and existing under and by virtue of the laws of the State of Florida, with their principal place of business at 600 Brickell Avenue, in the City of Miami, Dade County, State of Florida. American Bankers Life Assurance Company of Florida will hereinafter be referred to as "Life", and American Bankers Insurance Company of Florida will hereinafter be referred to as "Insurance."

Plaintiffs properly invoke the jurisdiction of this Court under 28 U.S.C., Section 1346, either to refund certain documentary stamp taxes paid or to redeem certain documentary stamps as may be determined by the Court, and this action lies within the jurisdiction of this Court.

Since on or about October 29, 1947, Insurance has continuously engaged in the business of insuring property situated within the United States against hazards, risks, losses or liabilities of various kinds, in accordance with the provisions of its charter and certificate of authority issued to it by the several states in which it insures property.

Since on or about February 6, 1952, Life has continuously engaged in the business of issuing life insurance, disability, sickness and accident policies, and annuity contracts to indemnify individuals, in accordance with the provisions of its charter and certificate of authority issued to it by the several states in which it issues policies of insurance.

From on or about October 24, 1961, through and including December 17, 1963, Insurance purchased contracts of reinsurance from foreign reinsurers not doing business in the United States, reinsuring certain of the risks undertaken by it under policies of insurance issued by it, with respect to hazards, risks, losses or liabilities within the United States.

From on or about August 30, 1961, through and including October 15, 1963, Life purchased contracts of reinsurance from foreign reinsurers not doing business in the United States, reinsuring certain of the risks undertaken by it under policies of insurance issued by it, with respect to indemnity for the lives

of individuals, disability, sickness and accident.

Insurance purchased the documentary stamps described herein pursuant to the alleged requirements of Section 4371(3) of the Internal Revenue Code of 1954, intending that they be used in payment of the alleged tax due on the contracts referred to above, in the amounts and dates set forth as follows:

| Date Stamps Purchased | Type of Tax | Amount of Stamps Purchased |
|---|---|---|
| 10/24/61 | Documentary stamp tax under Sec. 4371(3) | $2,800.00 |
| 2/23/62 | Documentary stamp tax under Sec. 4371(3) | 2,330.67 |
| 8/27/62 | Documentary stamp tax under Sec. 4371(3) | 2,900.00 |
| 4/26/63 | Documentary stamp tax under Sec. 4371(3) | 3,193.97 |
| 12/17/63 | Documentary stamp tax under Sec. 4371(3) | 952.69 |

———◆———

Life purchased the documentary stamps described herein pursuant to the alleged requirements of Section 4371(3) intending that they be used in payment of the alleged tax due on the contracts referred to above:

| Date Stamps Purchased | Type of Tax | Amount of Stamps Purchased |
|---|---|---|
| 8/30/61 | Documentary stamp tax under Sec. 4371(3) | $3,861.65 |
| 11/30/61 | Documentary stamp tax under Sec. 4371(3) | 3,683.65 |
| 12/29/61 | Documentary stamp tax under Sec. 4371(3) | 2,768.95 |
| 3/30/62 | Documentary stamp tax under Sec. 4371(3) | 2,906.78 |
| 6/26/62 | Documentary stamp tax under Sec. 4371(3) | 3,340.40 |
| 10/17/62 | Documentary stamp tax under Sec. 4371(3) | 4,473.41 |
| 12/28/62 | Documentary stamp tax under Sec. 4371(3) | 3,055.96 |
| 5/28/63 | Documentary stamp tax under Sec. 4371(3) | 2,900.69 |
| 10/15/63 | Documentary stamp tax under Sec. 4371(3) | 3,007.37 |

Plaintiffs from time to time caused the stamps referred to above to be glued to sheets of paper due to insufficient space on the contracts of reinsurance, caused the stamps to be marked "cancelled," and caused a notation of the number and date of the plaintiffs' checks used to purchase the stamps to be made upon the sheets of paper. The sheets of paper were not physically attached to the contracts of reinsurance. In the case of Insurance, the sheets of paper with stamps attached were kept in the files of the treasurer's office in a folder marked "Federal Excise Stamp Tax, Purchases," and in the case of Life, were kept in its safety deposit box. The contracts of reinsurance were kept in the files of the treasurer of each of the plaintiffs. The stamps were cross-indexed in the books and records of plaintiffs by dates of purchase, check number and amount of each purchase to the contracts of reinsurance, premium receipts and periods of coverage. The sheets of stamps are now in the possession of the defendant.

On or about August 20, 1964, Insurance duly and timely filed with the District Director of Internal Revenue in Jacksonville, Florida, its claim on IRS Form 843 in the amount of $12,177.33.

On or about August 20, 1964, Life duly and timely filed with the District Director of Internal Revenue in Jacksonville, Florida, its claim on IRS Form 843 in the amount of $29,998.86.

On or about September 14, 1964, all stamps referred to above were returned to the Internal Revenue Service as evidenced by IRS Form 2725, Document Receipt, dated September 14, 1964, and the stamps are still in the possession of the United States Treasury Department and/or the Internal Revenue Service.

By letters dated March 16, 1965, the District Director of Internal Revenue advised plaintiffs that he proposed disallowances of their claims. Plaintiffs each executed IRS Form 2297, Waiver of Statutory Notification of Claim Disallowance, on July 6, 1965.

Plaintiffs are and always have been the sole owners of the claims referred to herein, and have not assigned or transferred the whole or any part thereof or any interests therein.

## I. DID PLAINTIFFS "AFFIX" THE STAMPS WITHIN THE MEANING OF SECTION 4374.

▆ The parties have agreed that if the stamps in question were "affixed" in payment of the tax, ("affixture" as required by the Internal Revenue Code of 1954 constituting "payment") the tax was paid and a refund suit is the proper remedy. If the stamps are found not to have been "affixed" the parties agree that a refund suit is not a proper remedy but that an action for redemption properly lies.

There is no dispute as to the facts. The issue is one of the legal interpretation to be given to the agreed facts. Plaintiffs purchased certain documentary stamps. Due to insufficient space on the contracts of reinsurance, defendants glued the stamps to sheets of paper and marked the stamps "cancelled". The sheets of paper were not physically attached to the contracts. The plaintiffs noted the number and date of the checks used to purchase the stamps on the sheets of paper. The stamps were cross-indexed in the books and records of plaintiffs to the contracts of reinsurance. The sheets of paper with the stamps attached were kept under plaintiffs' supervision and control. The sheets with the stamps attached are now in the possession of the defendant.

Section 4374 of the Internal Revenue Code of 1954 provides as follows:

### AFFIXING OF STAMPS

"Any person to or for whom or in whose name any policy, indemnity bond, or annuity contract referred to in section 4371 is issued, or any solicitor or broker acting for or on behalf of such person in the procurement of any such instrument, shall affix the proper stamps to such instrument."

The Treasury Regulations promulgated under Section 4374 are found in Sec. 47.4374–1.[1]

Plaintiffs claim that there was no room on the contracts to place the stamps. By using separate sheets of paper appropriately cross-indexed, they attempted to comply with the law to the extent made practicable under the circumstances.

If the word "affix" is given its literal and technical definition, then the plaintiffs should have attached physically the documentary stamps to the appropriate contracts of reinsurance. But the Government does not appear to argue that a strict rule of physical attachment must be applied in this case. The Government's position appears to be that the requirements of Section 4374 would be satisfied if the sheets of paper to which the stamps were actually affixed were physically annexed to the contracts themselves. The issue thus narrowly drawn is whether it is necessary for the sheets of paper adapted for plaintiffs' use to be stapled, pinned, glued, clipped or otherwise attached to the reinsurance contracts in order to comply with the law.

In this connection it is important to consider the purpose underlying the need for the stamps to be "affixed" and identified with a particular contract. One readily can see that the purpose for requiring that documentary tax stamps be "affixed" is to prevent the purchaser of a stamp from using that stamp in connection with more than one document.

The Government is fearful that Court approval of plaintiffs' practice herein may tempt less ethical parties to evade the statutory requirements of the Documentary Stamp Tax Act. The basis for the Government's fear is not documented but it may well be real. Nevertheless, the Court is confident that representatives of the Government will properly examine the circumstances in each particular stamp case to determine whether any illegal or evasive conduct exists. Appropriate administrative, executive and finally judicial avenues are available to remedy and correct such conduct if, where, and when it is found to exist.

The Government expressly disclaims any claim that plaintiffs herein are engaged in any fraudulent conduct by their use of separate sheets of paper. The fact that others at some later date may be tempted to evade the law is no justification or excuse to penalize or punish these plaintiffs.

The Court is satisfied that these plaintiffs in good faith substantially and effectively complied with the spirit of Section 4374, if not the literal letter of that law. The Court concludes that plaintiffs' actions in handling the stamps purchased for use on the contracts of reinsurance constituted "affixing" within the meaning of the Internal Revenue Code of 1954.

II. ARE REINSURANCE CONTRACTS ISSUED BY FOREIGN REINSURERS TO REINSURE CONTRACTS ISSUED BY DO-

1. Sec. 47.4374–1 *Affixing of stamps.*

(a) *General.* (1) Documentary stamps shall be used in payment of the tax. Requisite stamps must be affixed to the first instrument whereby the taxable contractual relationship is created, continued, or renewed, whether it be a letter of acceptance, a cablegram, or other instrument by whatever name called. Where the instrument which creates or evidences the contractual relationship is confirmed by a subsequent instrument, the latter shall bear a notation designating such prior instrument (referred to in this section as the original instrument) and show-

ing that the requisite stamps have been affixed thereto and canceled.

(2) In any case where the amount of the premium is not definitely determined at the time of entering into the taxable contractual relationship, the stamps may be affixed to the receipts for monthly or other payments if proper notation be made upon such receipts identifying the original instruments to which they apply.

(3) The stamps shall be affixed by any person who is a party to the taxable contractual relationship, including any solicitor or broker acting for or on behalf of such person.

MESTIC INSURERS TAXABLE UNDER SECTION 4371.

The broad issue presented is whether certain language embodied in a Congressional enactment is so clear and unequivocal as to preclude further inquiry by the Court. More particularly, the Court is asked to decide whether the substitution of the word "taxable" for the word "described" effectively rendered nontaxable insurance contracts issued by foreign insurers to reinsure policies issued by domestic insurers.

Section 4371 of the Internal Revenue Code of 1954 [1a] reads as follows:

*Imposition of tax.*

*"There is hereby imposed, on each policy of insurance,* indemnity bond, annuity contract, or policy of reinsurance *issued by any foreign* insurer or reinsurer, a tax at the following rates:*

(1) *Casualty insurance and indemnity bonds.*—Four cents on each dollar, or fractional part thereof, of the premium charged on the policy of casualty insurance or the indemnity bond, if issued to or for, or in the name of, an insured as defined in section 4372(d).

(2) *Life insurance, sickness, and accident policies,* and annuity contracts. —One cent on each dollar, or fractional part thereof, of the premium charged on the policy of life, sickness, or accident insurance, or annuity contract, unless the insurer is subject to tax under section 819.

(3) *Reinsurance.*—One cent on each dollar, or fractional part thereof, of the premium charged on the policy of reinsurance covering any of the contracts *taxable* under paragraph (1) or (2)." (Emphasis supplied)

Section 4372(f) of the Code provides as follows:

DEFINITIONS

\* \* \* \* \* \*

"(f) Policy of Reinsurance.—For purposes of section 4371(3), the term "policy of reinsurance" means any policy or other instrument by whatever name called whereby a contract of reinsurance is made, continued, or renewed against, or with respect to, any of the hazards, risks, losses, or liabilities covered by contracts *taxable* under paragraph (1) or (2) of section 4371." (Emphasis supplied.)

The forerunner to Section 4371 was Section 1804 of the Internal Revenue Code of 1939, as Amended by the Revenue Act of 1942. It read as follows:

INSURANCE POLICIES

"(a) *Insurance policies other than life, and indemnity, fidelity, or surety bonds.*—On each policy of insurance (other than life), indemnity, fidelity, or surety bond, or certificate, binder, covering note, receipt, memorandum, cablegram, letter, or other instrument by whatever name called whereby a contract of insurance or an obligation of the nature of an indemnity, fidelity, or surety bond is made, continued, or renewed against, or with respect to, hazards, risks, losses, or liabilities wholly or partly within the United States, if issued to or for, or in the name of, a domestic corporation or partnership, or an individual resident of the United States, or with respect to hazards, risks, or liabilities within the United States, if issued to or for, or in the name of, a foreign corporation, foreign partnership, or nonresident individual, engaged in a trade or business within the United States, and if the insurer is a nonresident alien individual, or a foreign partnership, or a foreign corporation, and if such policy or other instrument is not signed or countersigned by an officer or agent of the insurer in a State, Territory, or District of the United States within which such insurer is authorized to do business, a tax of 4 cents on each dollar, or fractional part thereof, of the premium charged.

"(b) *Life insurance, sickness, and accident policies, and annuity contracts.* —On each policy of insurance or an-

la. 26 U.S.C. 1964 ed., Sec. 4371.

nuity contract, or certificate, binder, covering note, receipt, memorandum, cablegram, letter, or other instrument by whatever name called whereby a contract of insurance or an annuity contract is made, continued, or renewed with respect to the life or hazards to the person of a citizen or resident of the United States, if the insurer is a non-resident alien individual, or a foreign partnership, or a foreign corporation, unless such policy or other instrument is signed or countersigned by an officer or agent of the insurer in a State, Territory, or District of the United States within which such insurer is authorized to do business, or unless the insurer is subject to tax under section 201, a tax of 1 cent on each dollar or fractional part thereof, of the premium charged.

"(c) *Reinsurance.*—On each policy of reinsurance, certificate, binder, covering note, receipt, memorandum, cablegram, letter or other instrument by whatever name called whereby a contract of reinsurance is made, continued, or renewed against, or with respect to, any of the hazards, risks, losses, or liabilities covered by contracts *described* in subsections (a) and (b) of this section if the reinsurer is a nonresident alien individual, or a foreign partnership, or a foreign corporation, and if such policy or other instrument is not signed or countersigned by an officer or agent of the reinsurer in a State, Territory, or District of the United States within which such reinsurer is authorized to do business, a tax of 1 cent on each dollar, or fractional part thereof, of the premium charged." (emphasis supplied)

There is no disputing the fact that under Section 1804, as amended, stamp taxes were required to be paid on contracts of reinsurance issued by foreign insurers on the basic contracts issued by domestic insurers. A comparative reading of the above sections reveals the change in language that was made pertaining to reinsurance contracts issued by foreign insurers. The issue before the Court is the tax significance, if any, to be attached to the substitution of the word "taxable" for the word "described".

"Described" is defined as follows [1b]:

"To represent by words written or spoken for the knowledge or understanding of others."

"Taxable" is defined as follows: [1c]

"1. Capable of being taxed; liable by law to the assessment of taxes. 2. that may be legally charged by a court against the plaintiff or defendant in a suit."

The literal import of the word "taxable" is being capable of or subject to taxation.

Plaintiffs' argument focuses primarily on the word "taxable". Plaintiffs contend that the meaning of "taxable" is so crystal clear and free of ambiguity that it precludes this Court from analyzing the entire section and its legislative history and purpose. Their position is simple to understand. Section 4371 subpart (3) refers to the reinsurance of policies taxable under subparts (1) and (2). In order to satisfy the requirements of "taxable", plaintiffs contend the basic policies must be issued by a foreign insurer. The basic policies in this case were issued by domestic insurers. Therefore, plaintiffs conclude, the policies issued in this case are not subject to the tax admittedly required under Section 1804.

██ Plaintiff's argument invokes the accepted doctrine of legislative interpretation making it the duty of the Court to apply statutes on the basis of what Congress has written, not what Congress might have written.

The government denies that Congress intended to bring about the consequences urged by the plaintiffs. The government suggests that the change was made by someone "in the performance of a

---

1b. Webster's Third New International Dictionary. Unabridged. 1967 Ed.

1c. Webster's Third New International Dictionary. Unabridged. 1967 Ed.

purely administrative or clerical function * * * in order to, as they no doubt believed, make a better sentence." Undoubtedly, that person and his superiors were oblivious of, or naive to, the implications that inevitably would be drawn from the change they made.

Plaintiffs are unwilling to concede that the drafting of important tax legislation is a matter for clerical formulation initially with the results, including changes of existing language, then being adopted by Congress without independent study. Plaintiffs insist that Congress must be bound by the language it uses regardless of the consequences.

 There exists in federal statutory construction, as in ordinary speech, a presumption that language is to be given its normal, natural and usual meaning, one that is commonly accepted and understood. Where the meaning of a statutory provision is clear, that language is the sole indication of legislative intent. Courts may not then resort to legislative history to aid in ascertaining Congressional intent. The statute, read with common sense, will be held to mean simply what it says and will be enforced as written. The consequence of such presumption is to foreclose any inquiry into legislative intent unless the language in question is ambiguous in meaning or subject to more than one reasonable interpretation.[2]

 The Court is mindful of its obligation to give full force and effect to statutory language when such language, given its normal and natural effect, is subject to but one reasonable interpretation. The Court cannot search for ambiguity where it does not exist but neither can it isolate words for the microscopic disection of the grammarian.[3] If the language employed, when literally defined, causes confusion, does violence to or conflicts openly with the intent of the section, the Court must resort to a construction of the language that will resolve the ambiguity without defeating the purpose of the Statute. Words should not be applied in a manner that would accomplish results contrary to the reasonable purpose of the legislators.[4]

There exists a certain initial appeal to the plaintiffs' argument. On the surface it appears reasonable to read "taxable" in the way plaintiffs suggest. A superficial reading of "taxable," isolated from its surroundings, does support plaintiffs' argument. The Court, however, is not persuaded here that "taxable" can be construed reasonably and sensibly when read in a vacuum. The results in this case cannot be dictated by undeviating devotion to technicality.

The crystal clarity of "taxable" becomes clouded with ambiguity and uncertainty when Section 4371 is read with care. The opening paragraph to the section imposes on *each* policy of insurance and related contracts issued by a foreign insurer or reinsurer a documentary stamp tax. The remainder of Section 4371, divided into three subparts, sets out the applicable tax rates. Subpart (1) imposes a tax of four cents on each dollar, or fraction thereof, of the premium charged for casualty insurance and indemnity bonds. Subpart (2) imposes a one cent tax on each dollar, or fraction thereof, of the premium charged for life insurance, sickness and accident policies and annuity contracts. Subpart (3) imposes a one cent tax on each dollar, or

---

2. See In re Nissen's Estate, 345 F.2d 230, 235 (4th Cir. 1965); Bookwalter v. Mayer, 345 F.2d 476, 479 (8th Cir. 1965).

3. C.I.R. v. Kelley, 293 F.2d 904, 912 (5th Cir. 1961).

4. Surely the Court has some discretion to adopt a restricted rather than a literal or usual meaning of a word where acceptance of the literal technical meaning would lead to absurd results or would thwart the obvious purpose of the Statute.

Helvering v. New York Trust Co., 292 U.S. 455, 465, 54 S.Ct. 806, 78 L.Ed. 1361 (1933); Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 87, 55 S.Ct. 50, 79 L.Ed. 211 (1934); Helvering v. Hammel, 311 U.S. 504, 510–511, 61 S.Ct. 368, 85 L.Ed. 303 (1940); C.I.R. v. Brown, 380 U.S. 563, 571, 85 S.Ct. 1162, 14 L.Ed.2d 75 (1964); Accord, Malat v. Riddell, 383 U.S. 569, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1965).

fraction thereof, of the premium charged on reinsurance policies covered under subparts (1) and (2).

It is not disputed that Congress could provide for non-discriminatory tax rates based upon the class or group of the basic contract. Likewise, it is not disputed that Congress could provide for one non-discriminatory rate to be applied on all foreign-issued reinsurance contracts without regard to the class of the basic contracts. The parties agree that under Section 1804, as amended, a valid tax was imposed on foreign reinsurers of contracts issued by domestic insurers. Plaintiffs thus now are limited to challenging the authority of the government to continue to impose this tax once the Congress eliminated the word "described" and inserted the word "taxable" in its place.

An inquiry into legislative history frequently provides a valuable and often necessary method to determine the intent of Congress when particular language appears to be inconsistent with the purpose of the statute. The parties agree that the sole legislative pronouncement with regard to the section here involved was as follows:

"Subtitle D, sections 4001 to 4907, inclusive, as passed by the House, consists of a rearrangement and simplification of the taxing provisions (including provisions relating to definitions, exemptions, and certain general provisions) of subtitles B and C of the 1939 Code (except chs. 7, 9, 15, 26, and 28; subch. B of ch. 25; and pts. VII and VIII of subch. A of ch. 27.) *The House bill made no substantive changes in the provisions of the 1939 Code which appear in subtitle D.* The provisions relating to procedure and administration (including penalties and forfeitures) which were contained in subtitles B and C (with the exceptions noted above) of the 1939 Code appear in subtitle F of the House bill.

"Your Committee's bill amends this subtitle to conform it to the changes made by the Excise Tax Reduction Act of 1954 (Public Law 324, 83rd Congress) in those provisions of the 1939 Code which are incorporated in this subtitle.[5] (Emphasis supplied)

It is at this point that the parties reverse their arguments. The plaintiffs now contend that Congress did not mean quite what it said in its report. The Government here argues that Congress meant exactly what it said.

It affirmatively appears to the Court that Congress, by inserting the word "taxable," did not intend to change the law with respect to the taxation of insurance contracts issued by foreign insurers and reinsurers. "Taxable" was an unfortunate choice in light of the confusion it has caused and the litigation it has generated. Nevertheless, a literal reading of "taxable" should be avoided in favor of a sensible construction of the section consistent with the legislative report. A reasonable interpretation of "taxable" under these circumstances is that contracts issued by foreign reinsurers must bear a stamp tax if they reinsure basic policies of the *type* covered or described in subparts (1) or (2). The basic policy itself need not have been issued by a foreign insurer under Section 1804. It need not be issued by a foreign insurer under Section 4371. It should be emphasized that the Court is not concerned with the wisdom of the legislation nor with the reasons that motivated Congress to enact the reinsurance provision. The Court is concerned only with what effect, if any, ought to be given to the substitution of "taxable" for "described."

 The Court concludes that it would be an unwise and excessive adherence to unreasoned technicality if the government were to be denied the right to impose and collect the taxes in question under these circumstances. Thereupon, it is

Ordered and Adjudged that in each of the above cases the plaintiffs' motions for summary judgment be and the same are hereby granted with respect to Issue

---

5. S.Rep. No. 1622, 83rd Cong. 2nd Sess., pp. 482–483 (3 U.S.C.Cong. & Adm. News (1954) Senate Report—Detailed Discussion of Bill, pp. 4621, 5127.)

One and denied with respect to Issue Two. It is further

Ordered and adjudged that the Government's motions for summary judgment be and the same are hereby denied with respect to Issue One and granted with respect to Issue Two.