**Ernest W. LOHF, as Trustee in Bankruptcy of the Estate of Sudler, Hart & Co., a Colorado corporation, d/b/a Sudler & Co., Plaintiff,**

v.

**William J. CASEY et al., Defendants.**

**Civ. A. No. C–3039.**

United States District Court,
D. Colorado.

Aug. 16, 1971.

William D. Scheid, Denver, Colo., for plaintiff.

Joseph F. Krys, Asst. Regional Administrator, Securities and Exchange Commission, Denver, Colo., Richard S.

Seltzer, Securities and Exchange Commission, and Theodore H. Focht, Gen. Counsel, Securities Investor Protection Corp., Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

This matter is before the court on the motion of the defendants to dismiss for failure to state a claim upon which relief can be granted. The plaintiff is the trustee in bankruptcy of Sudler, Hart & Co. (Bankrupt), a firm which was adjudicated bankrupt in 1969. The defendants are the individual members of the Securities and Exchange Commission and the Securities Investor Protection Corporation.

On December 30, 1970, more than a year after Sudler, Hart & Co. was adjudicated bankrupt, the Securities Investor Protection Act, 15 U.S.C.A. § 78aaa et seq., took effect. The Act was intended to afford protection to the customers of broker-dealers who fell into financial difficulty, and towards that goal effected the creation of the Securities Investor Protection Corporation (SIPC). SIPC is a membership corporation, whose members consist of all persons registered as a broker-dealer with the SEC. Under the Act the corporation is to establish an insurance fund drawing upon assessments against all members, and the fund is to be disbursed to customers of member firms which are unable to meet their obligations.

The argument of the plaintiff in support of his assertion that the Act should be extended to customers of the Bankrupt is quite simple. In briefest form, he claims that the Bankrupt is a member of SIPC, that there is a mandatory duty imposed upon SIPC to protect the customers of its members, and therefore that SIPC must seek to indemnify the customers of the Bankrupt. The defendants do not challenge the assertion that the Bankrupt is technically a member of SIPC, nor do they direct any vigorous opposition to the assertion of a mandatory duty. Rather, the defendants argue that to apply the statute to this case would be to give it retroactive effect, that there is no expression in the statutory language of an intended retroactivity, that the legislative history clearly demonstrates no such intent existed, and therefore that SIPC is not obligated to protect the customers of the Bankrupt.

There are two general rules of statutory construction which are in at least superficial conflict here. The first is the rule that no resort will be had to legislative history or other extrinsic evidence of intent unless the statutory language is unclear or ambiguous. Flora v. United States, 357 U.S. 63, 65, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1968); Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917); United States v. Shreveport Grain & Elev. Co., 287 U.S. 77, 87, 53 S.Ct. 42, 77 L.Ed. 175 (1932); Community Blood Bank of Kansas City Area v. FTC, 405 F.2d 1011, 1015 (8th Cir. 1969); American Bankers Ins. Co. of Florida v. United States, 265 F.Supp. 67, 74 (S.D.Fla.1967). The second rule of construction is that "a substantive statute will not be construed to operate retroactively unless that intention has been manifested by clear and unequivocal expressions." Gibbons v. Pan American Petroleum Corp., 262 F.2d 852, 855 (10th Cir. 1958). Claridge Apartments Co. v. Commissioner of Internal Revenue, 323 U.S. 141, 164, 65 S.Ct. 172, 89 L.Ed. 139 (1944); In re Colorado Mercantile Co., 299 F.Supp. 55, 57 (D.Colo.1969).

The plaintiff urges that the first of these rules is the one applicable here, and he relies upon the language of Section 3 of the Act, 15 U.S.C.A. § 78ccc, as support for his position. That section states that "all persons" registered as broker-dealers with the SEC "shall" be members of SIPC. This language, the plaintiff argues, is clear on its face, and when combined with the mandatory duty of SIPC to protect customers of its

members the Act clearly includes the customers of the Bankrupt. We would be inclined to agree with this argument were it not for the question of retroactivity. The language is, indeed, clear as to prospective effect; nonetheless, the mere fact that the statute fails to mention retroactivity creates an ambiguity justifying resort to legislative history. This result would not necessarily follow were it possible to construe a statute as retroactive by inference from the language, but Gibbons v. Pan American Petroleum Corp., *supra*, clearly states the opposite rule. That case is closely analogous because the statute there in question purported to govern "any" lease. The Court of Appeals recognized the inclusive nature of the term but found that a positive statement of retroactivity is necessary for such a construction to be permitted. 262 F.2d at 855. In light of that decision it is clear that the statutory language relied upon by the plaintiff does not by itself convey a clear intention of retroactive effect, and if that were the only basis for decision the complaint would have to be dismissed.

To avoid that result the plaintiff advances three rationales. The first argument is that, contrary to the opinion of the defendants, the legislative history shows a desire by Congress to protect the customers of firms who were not members of any exchange and who consequently could draw upon no funds to meet their obligations. It is perfectly clear that Congress was concerned about this problem, yet it is equally clear that Congress expressed an intention of refusing to make the Act retroactive. The record is replete with comments to that effect, the most cogent example being the report of the Committee on Interstate and Foreign Commerce:

> It is the clear intention of your committee that SIPC assume no liability for firms either in net capitol violation, in liquidation, or in bankruptcy at the time of the creation of SIPC. H.R.Rep.No.1613, 91st Cong., 2d Sess. 14 (Oct. 21, 1970), reprinted in 3 U.S.

Code Cong. & Admin.News '70 at 5268.

This language is frequently echoed in the debates on this bill, and it seems clear that Congress did not intend the bill to operate retroactively.

The second argument of plaintiff is that the Congressional debates focused only on the plight of certain members of the New York Stock Exchange, with no discussion of the problems of non-member firms. The plaintiff asserts that Congress felt the Exchange should rescue its members without governmental assistance, in part at least because the Exchange had used its trust fund as an advertising point assuring the public that it could invest confidently with member firms. Because of this feeling by Congress, the Act was not intended to protect customers of any of the major exchanges which had trust funds for that purpose. The plaintiff concludes from this that non-member firms were not included in the discussion of retroactivity, and that the Act should therefore be read as retroactive with regard to them. Although all discussions of retroactivity apparently focused on the New York Stock Exchange, there are three reasons for the failure of the plaintiff's argument. In the first place, the Congress made no attempt in the statute to distinguish between member and non-member firms, and we "cannot impose upon the plain language [our] own idea of what Congress must have meant." H. A. Brody Corp. v. United States, 197 F.Supp. 918, 922 (S.D.Iowa 1961). Burge v. Commissioner of Internal Revenue, 253 F.2d 765, 769 (4th Cir. 1958); Mackenzie v. Hare, 239 U.S. 299, 308, 36 S.Ct. 106, 60 L.Ed. 297 (1915). Since there is no indication in either the statutory language or the legislative history that Congress meant to distinguish between broker-dealers on the basis of membership in an exchange, we cannot "impose" such a distinction on the language. Secondly, there is no reference in the legislative history, nor is there any evidence before this court, which suggests the number of firms in

financial difficulty on or before the date the Act was passed or the amount of claims which would be advanced against SIPC by the customers of such firms. It is doubtful that Congress would have contemplated authorizing such claims against the fund without first ascertaining the extent to which they would deplete the fund, particularly in light of the fact that the firms involved would have made little or no contribution to SIPC. Since Congress did not discuss this problem it is reasonable to assume that they did not intend any firms in the position of the Bankrupt to be covered by the Act. Finally, the argument must fail because the very most the legislative history proves is that Congress was silent on the more specific point of protecting customers of independent firms. Assuming this to be true, the statutory language is still insufficient to constitute a "clear and unequivocal" mandate of retroactivity. Gibbons v. Pan American Petroleum Co., *supra.*

■ The final argument of the plaintiff in support of his complaint is the assertion that extending the Act to cover customers of the Bankrupt would not be giving retroactive effect to the statute. It is fairly clear that "a statute is not rendered retroactive merely because the facts or requisites upon which its subsequent action depends are drawn from a time antecedent to its enactment." Benjamin v. Hunter, 176 F.2d 269, 272 (10th Cir. 1949). Neild v. District of Columbia, 71 App.D.C. 306, 110 F.2d 246, 255 (1940); Smith v. Moore, 225 F.Supp. 434, 447 (E.D. Va. 1963). The argument of the plaintiff is fairly simple. The Act created an insurance corporation which was obligated to protect the customers of firms in financial difficulty. Since the Bankrupt was a member of that corporation the obligation to protect its customers arose immediately upon passage of the Act, and the fact that the financial difficulty became acute before the Act was passed has no bearing upon the scope of the obligation. This is an attractive argument, but it too must fail.

In the first place, the result urged by the plaintiff would directly contradict the language of the House Report quoted above, that SIPC would "assume no liability for firms either in net capitol violation, in liquidation, or in bankruptcy at the time of the creation of SIPC." Of more importance, however, is the failure of the plaintiff's argument to refute a finding that retroactivity is implicit in the relief he desires.

■ A retroactive statute is one which "takes away or impairs a vested right acquired under existing laws," and a statute will be considered retroactive if giving it the desired effect would "create a new obligation or impose a new duty or attach a new disability in respect to transactions * * * already past." In re Colorado Mercantile Co., 299 F.Supp. 55, 57 (D.Colo.1967). The defendants argue, and we agree, that to grant the relief the plaintiff seeks would be to "create a new obligation * * * in respect to transactions * * * already past." In the ordinary course of events the party claiming that a statute should not be applied retroactively would be a party to the original transaction, and in that case the inequities of retroactivity would be much more apparent. Nonetheless, the same considerations are relevant here. While SIPC would not be a party to the transactions between the dealer and his customers in any ordinary sense, it does have a strong, albeit indirect, interest in the dealer's business. The fund used to protect customers is to be maintained by assessments against members, and consequently both the industry and SIPC have an interest in protecting that fund. The Act does grant some discretion to the SIPC as to how it shall proceed, in that § 5(a)(2) states that the corporation "may" seek a decree forcing liquidation of a member. 15 U.S.C.A. § 78eee(a)(2). While that grant of discretion may not be as broad as the defendants contend, it clearly permits

SIPC to attempt to assist member firms out of their difficulty and thus protect the fund. Obviously, such a course of action is not available here. Consequently, the relief the plaintiff desires would impose an obligation upon SIPC as to transactions which SIPC could in no way have prevented, discouraged or overseen. This would mean the corporation was liable for financial obligations of the bankrupt even though it was unable to take any steps to obviate the problem short of liquidation. Since application of the statute would deprive SIPC of an alternative clearly contemplated by the Act, yet would do so as to transactions occurring before the Act was passed, it would in effect be making the Act retroactive.

It could be argued that this result would require SIPC to protect only those customers whose rights against a member firm accrued after the Act was passed, because indemnifying any other customers would be giving the Act retroactive effect. However, this argument misses the thrust of the conclusion, which is that SIPC may not be deprived of an opportunity to rescue a member firm and thus protect the fund. If in the future SIPC permits a firm to go bankrupt without attempting a rescue, it will still have had the opportunity to do so. Similarly, the fact that SIPC has, apparently, sought two decrees against members allegedly in financial difficulty before the Act was passed is not inconsistent with this decision. In both cases SIPC had an opportunity to effect a rescue but either decided not to do so or was unsuccessful in its attempt. Still, the opportunity was there.

■ For the reasons set out here we have come to the conclusion that to grant the relief the plaintiff seeks would be to give retroactive effect to the Securities Investor Protection Act of 1970, and that neither the statute nor the legislative history will permit that result. It is therefore

Ordered that the motion of the defendants SEC and SIPC to dismiss for failure to state a claim upon which relief can be granted be and the same hereby is granted.