SECURITIES AND EXCHANGE COMMISSION, Appellee,

v.

GUARANTY BOND AND SECURITIES CORP. et al., Defendants,

James C. Barbour, Receiver, Appellant.

No. 73-1451.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 12, 1973.

Decided April 23, 1974.

W. Ovid Collins, Jr., Cornelius, Collins, Higgins & White, Nashville, Tenn., on brief, for defendant-appellant James C. Barbour.

Michael A. Macchiaroli, Washington, D. C., for plaintiff-appellee S.E.C.; Lawrence E. Nerheim, Gen. Counsel, David Ferber, Solicitor, Securities and Exchange Comm., Washington, D. C., on brief.

Wilfred R. Caron, Associate Gen. Counsel, Securities Investor Protection Corp., Washington, D. C., for appellee S.I.P.C., Theodore H. Focht, Gen. Counsel, Securities Investor Protection Corp., Washington, D. C., on brief.

Before PHILLIPS, Chief Judge, CELEBREZZE and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

Guaranty Bond and Securities Corporation was registered with the S.E.C. as a broker and dealer in securities as required by Section 15(b) of the Securities Exchange Act of 1934. As part of its business, it promoted the sale of church bonds. On December 22, 1970, the S.E.C. filed in the court below a complaint against Guaranty alleging net capital violations contrary to the federal securities laws including Section 15(c)(3) of the Securities Exchange Act, 15 U.S.C. 78o(c)(3). Injunctive relief was sought against the alleged violations.

The district court, finding that Guaranty had violated the S.E.C.'s net capital rule and that such violation had existed for a substantial period of time prior to the filing of the complaint by the S.E.C., granted a preliminary injunction. The court further found that between the filing of the complaint on December 22, 1970 and the granting of the injunction on January 6, 1971, Guaranty had continued to engage in substantial business, handling 101 transactions after the effective date of the Act creating the Security Investor Protection Corporation. On application of S.E.C., a receiver was appointed for Guaranty to take charge of all of its assets subject to the further orders of the court.

On March 31, 1972, the receiver filed a petition for an order directed to the S.E.C. and the Securities Investor Protection Corporation requiring each of them to show cause why S.I.P.C. should not be required to intervene in the action and afford to the customers of Guaranty the benefits of the Act. The show cause order was issued accordingly and both S.E.C. and S.I.P.C. responded. The court, without an evidentiary hearing, filed its memorandum opinion in which it found that the Act (S.I.P.A.) was inapplicable to customers of Guaranty for the reason that Guaranty was insolvent and in financial difficulties before the effective date of S.I.P.A. To hold otherwise, it

was said, would be to give the Act a forbidden retroactive effect. The court accordingly ordered that S.I.P.C. should be dismissed from the action. This order was certified as a final judgment for purposes of appeal.

■ The Securities Investor Protection Act was enacted in response to the need to protect the customers of securities brokers and dealers which might fail, thereby jeopardizing the cash and securities that customers had left on deposit with the firm.[1] S.I.P.A. accordingly created the Securities Investor Protection Corporation as a "non-profit corporation," not designed to "be an agency or establishment of the United States Government," but rather to be "a membership corporation,"[2] consistent with the self-regulatory nature of the securities industry. 15 U.S.C. 78ccc(a). The S.I.P.C.'s role is primarily one of consultation and cooperation with the self-regulatory organizations which remain subject to the federal securities laws and the rules of the S.E.C. By mandating membership in the S.I.P.C. for certain members of the securities industry and by granting the S.I.P.C. gen-eral assessment authority over the members in order to establish an S.I.P.C. fund, Congress accomplished its intention that the cost of providing protection to customers under S.I.P.C. was to be borne by the securities industry itself.[3]

Under 15 U.S.C. Sec. 78 eee(a)(1), if the S.E.C. or any self-regulatory organization believes that a broker or dealer subject to its regulation is in, or approaching, financial difficulty, it must notify immediately the S.I.P.C. If the S.I.P.C. determines that a member broker or dealer has failed or is in danger of failing to meet its obligations to customers, it is authorized to seek a decree in an appropriate court adjudicating that the customers of a member of S.I.P.C. are in need of the protection of the Act. 15 U.S.C. Sec. 78 eee(a)(2). Upon so finding, the district court shall grant the decree and appoint a trustee for the liquidation of the business and an attorney for the trustee. The objectives of the proceeding, in addition to operating the business for a limited purpose, completing the open contractual

1. The legislative history shows the purpose of the S.I.P.A.

  The serious and persistent financial problems besetting the securities industry in recent months have led to the voluntary liquidations, mergers, receiverships or, less frequently, bankruptcies of a substantial number of brokerage houses. Such failures may lead to loss of customers' funds and securities with an inevitable weakening of confidence in the U. S. securities markets. Such lessened confidence has an effect on the entire economy. Whatever other steps must be taken to improve these conditions, one objective of the bill, as reported, is to provide investors protection against losses caused by the insolvency of their broker-dealer. The need is similar, in many respects, to that which prompted the establishment of the Federal Deposit Insurance Corporation and the Federal Savings and Loan Insurance Corporation.

  4 U.S.Code Congressional and Administrative News, p. 5255 (1970).

2. The members of S.I.P.C., as defined by 15 U.S.C. Sec. 78ccc(a)(2), are:

  (A) all persons registered as brokers or dealers under section 78o(b) of this title, and

  (B) all persons who are members of a national securities exchange, other than persons whose business as a broker or dealer consists exclusively of (i) the distribution of shares of registered open end investment companies or unit investment trusts, (ii) the sale of variable annuities, (iii) the business of insurance, or (iv) the business of rendering investment advisory services to one or more registered investment companies or insurance company separate accounts;

3. S.I.P.C.'s first responsibility under the Act was to establish a fund which would consist of all amounts received by S.I.P.C. and from which all expenditures would be paid. 15 U.S.C. Sec. 78ddd(c). If the fund should become insufficient for the purposes of the Act, the S.E.C. is authorized, if necessary for the protection of the customers of brokers and dealers and for the maintenance of confidence in the United States securities markets, to issue notes under certain conditions to the Secretary of the Treasury in an amount up to one billion dollars, which then may be lent to S.I.P.C. 15 U.S.C. 78ddd(g).

commitments of the dealer, enforcing rights of subrogation and liquidating the business of the dealer, are "as promptly as possible" (1) to return specifically identifiable property to the customers of a firm, (2) to distribute the "single and separate fund," and (3) to pay to customers monies advanced by S.I.P.C. 15 U.S.C. 78 fff(a). To provide for prompt satisfaction of the net equities of the dealer's customers, S.I.P.C. must advance to the trustee such monies as may be required to satisfy the full claims of each customer not to exceed $50,000. 15 U.S.C. 78 fff(f).

If S.I.P.C. refuses to act, the S.E.C. is authorized by 15 U.S.C. 78 ggg(b),[4] to apply to the court for an order requiring the S.I.P.C. to discharge its obligations under the Act.

■ The present appeal involves a unique situation. The appellant, as mentioned earlier, urges, contrary to the district court's decision, that the Act is applicable to Guaranty Bond. The S.E.C. agrees with the appellant's contention that the Act is applicable, but challenges the court's decision that the receiver has standing to petition the court to apply the Act. The S.I.P.C. agrees with the district court as to the inapplicability of the Act but challenges, along with the S.E.C., the receiver-appellant's standing to obtain compliance with the Act.

The S.I.P.A. was effective on December 30, 1970. In two cases, Lohf v. Casey, 330 F.Supp. 356 (D.Colo.1971), aff'd. 466 F.2d 618 (10th Cir. 1972) and Bohart-McCaslin Ventures, Inc. v. Midwestern Securities Corp., 352 F.Supp. 937 (N.D.Texas 1973), courts have held that S.I.P.A. was not intended to apply to a broker-dealer who had failed prior to that date. The district court in Lohf, supra 330 F.Supp. at 358 stated:

". . . it is equally clear that Congress expressed an intention of refusing to make the Act retroactive. The record is replete with comments to that effect, the most cogent example being the report of the Committee on Interstate and Foreign Commerce:

'It is the clear intention of your committee that SIPC assume no liability for firms either in net capital violation, in liquidation, or in bankruptcy at the time of creation of SIPC. H.R.Rep.No.1613, 91st Cong., 2nd Sess. 14 (Oct. 21, 1970), reprinted in 3 U.S.Code Cong. & Admin.News '70 at 5268.'

This language is frequently echoed in the debates on this bill, and it seems clear that Congress did not intend the bill to operate retroactively."

Congress seemed to be concerned that S.I.P.C. not be used to compensate customers of member firms of the New York Stock Exchange which "have closed their doors and begun liquidation," when the Exchange had not advanced money from its existing trust fund to protect the customers of those firms. As mentioned earlier in the *Lohf* quote, the Committee Report did use very broad language when it stated that coverage be withheld from firms "either in net capital violation, in liquidation, or in bankruptcy at the time of creation of S.I.P.C." H.R.Rep.No.91–1613, 91st Cong., 2d Sess. p. 14 (1970). The meaning of this broad language was subsequently clarified by Representative Moss, sponsor of the Bill, on the floor of the House, when he stated:

"Finally, we have been concerned all along with the problem of providing protection to the customers of *firms that might fail before enactment of the bill into law*. We early anticipat-

---

4. 15 U.S.C. 78ggg(b) provides that:
   In the event of the refusal of SIPC to commit its funds or otherwise to act for the protection of customers of any member of SIPC, the Commission may apply to the district court of the United States in which the principal office of SIPC is located for an order requiring SIPC to

discharge its obligations under this chapter and for such other relief as the court may deem appropriate to carry out the purposes of this chapter.
   As mentioned above, this section is hardly couched in terms of exclusivity—a feat easily accomplished had it been the intent of Congress.

ed this possibility but we have specifically declined to make the bill retroactive in its application. The bill is prospective from the date of its enactment." [emphasis supplied] 116 Cong.Rec. 39350–39351, 12–1–70.

Congress, lacking precise information on the condition of the industry, was concerned with the impact that S.I.P.C. coverage might have on the Treasury. The losses that had already been experienced by the industry were regarded by Congress as the industry's responsibility. S.Rep.No.1218, 91st Cong.2d Sess. 6 (1970); H.R.Rep.No.91–1613, 91st Cong., 2d Sess. 14 (1970).

Clearly to apply S.I.P.C. to a firm that was bankrupt prior to the Act would be to give the Act a retroactive application that runs counter to the Act's clear purpose as reflected by its legislative history. However, application of the Act to Guaranty would not be in our view a retroactive application. "A statute is not rendered retroactive merely because the facts or requisites upon which its subsequent action depends are drawn from a time antecedent to its enactment." Benjamin v. Hunter, 10 Cir., 176 F.2d 269 at 272. The time period of the financial difficulties of the broker-dealer bears more on the status of the broker within the meaning of the Act than upon the issue of retroactivity.

The court in *Lohf* found the absence of business activity subsequent to the effective date of the Act as determinative of the non-coverage issue when it stated:

> However, it is apparent that plaintiff was not conducting its business as a broker or dealer at the effective date of the Act. The business was in the jurisdiction of the bankruptcy court, and the day to day decisions were being made by the trustee. We cannot consider plaintiff then to be a "broker or dealer," whether registered or not, as contemplated by the Act. It makes no difference for these purposes that plaintiff's registration had not been officially terminated, and

thus the automatic membership in the Securities Investor Protection Corporation may have continued in form. It could not be expected that the Act could be applied to firms which had already gone out of business. Plaintiff thus did not have the status of a broker or dealer for the purposes of the Act. 466 F.2d at 620.

The district court in *Bohart-McCaslin Ventures, Inc., supra* 352 F.Supp. at 940 made a similar determination when it stated:

> For purposes of determining coverage under the Act, this Court discerns no legal difference between a firm in bankruptcy and a firm in the financial and legal condition which Midwestern suffered prior to the effective date of the Act. Midwestern, prior to the effective date of the Act, had ceased to be a broker-dealer in any real sense of that term and has not resumed the normal activities of a broker-dealer even at the present time.

These determinations are not applicable to Guaranty since it actually conducted a substantial business after the effective date of the Act. In light of the purposes of the Act, the 101 transactions conducted by Guaranty after the effective date are sufficient, we believe, to qualify Guaranty's customers for the protection provided by the Act. As the Tenth Circuit stated in *Lohf* concerning the coverage of the Act:

> We must take this to mean firms or persons which were actually in business in the usual sense at the critical date were the "brokers or dealers" referred to. Congress was willing to extend coverage to then financially weak institutions and those of unknown strength, but the line was drawn to exclude those which had failed and were thus in fact not brokers or dealers. Supra 466 F.2d at 621.

We hold that Guaranty, though financially weak, was, in fact, a broker or dealer at the effective date of the Act.

The court below focused on the filing date of the action against Guaranty by the S.E.C. which was prior to the effective date of the Act. However, the S.E.C. did not seek to force Guaranty into receivership until after the effective date. Therefore, the filing of the original S.E.C. action did not prevent Guaranty from conducting normal business after the effective date of the Act and thus qualifying as a broker-dealer.

■ The S.I.P.C. and the S.E.C. challenge the receiver's standing to bring an action to compel either of them to act under the S.I.P.A. The court below held that the provisions of the Act "do not limit this court's power to adjudicate an enforcement action brought by a receiver of an insolvent member of S.I.P.C." We agree. The appellees point to an absence of express language providing for an enforcement action by the customers of a securities company or their representatives as prohibiting such an action. We are persuaded, however, that the lack of express language of exclusivity in providing for an enforcement action by the S.E.C., coupled with a general provision allowing for suits against the S.I.P.C.,[5] evidences an intent by Congress that the statute should not be as narrowly construed as the appellees urge.

The customers of Guaranty have a definite interest in the application of the S.I.P.A. to the present litigation. The receiver, the representative of the customers of Guaranty, seeks to have the S.I.P.C. meet its obligations to the customers under the broad purposes of the S.I.P.A. Apparently, the S.I.P.C. has not attempted to obtain an adjudication of the necessity for providing the protections of the S.I.P.A. to the customers of Guaranty. Nor has the S.E.C. moved to compel the S.I.P.C. to meet its obligations. We do not believe that Congress intended under such circumstances to leave the customers of securities firms without remedy under the S.I.P.A. Furthermore, despite the appellees urgings, we find no constitutional[6] or statutory prohibition[7] to the maintenance of an enforcement action by the receiver in this case.[8]

The judgment of the district court holding the S.I.P.A. inapplicable and dismissing the action as to S.I.P.C. must therefore be reversed for the reasons stated herein. Since we reject the premise on which the S.I.P.C. was dismissed as a party to the action—the inapplicability of the S.I.P.A. to a company of Guaranty's status—the action is remanded to the district court for proceedings consistent with this opinion and specifically to determine and enforce any rights of Guaranty's customers under the S.I.P.A.

5. 15 U.S.C. 78ccc(b)(1) provides that the S.I.P.C. has the power "to sue and be sued, complain and defend, in its corporate name and through its own counsel, in any court, State, or Federal."

6. To meet the "case or controversy" requirement of the Constitution, the Supreme Court has formulated a standard for ascertaining those persons with "standing" for maintaining an action in a federal court. The standard as defined by the Supreme Court in Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1971), is that one must have suffered "injury in fact" and the injury must be to an "interest argu-ably within the zone of interests to be protected." The customers of Guaranty and their representative clearly meet this broad standard. See also Data Processing Service v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184.

7. As mentioned earlier, there are no terms of exclusivity of enforcement in the statute.

8. The S.I.P.C. also attacks the jurisdiction —both subject matter and in personam—of the district court to entertain this action. We find that the district court sufficiently disposed of these contentions in its memorandum opinion.